THE STATE OF WISCONSIN ex rel. THE GREEN BAY & MINNESOTA RAILROAD COMPANY vs. JENNINGS and another.

*February 10 — February 24, 1880.*

MANDAMUS: ISSUE OF TOWN BONDS IN AID OF RAILWAY. *(1) Statute of limitations. (2) Laches in demanding bonds. (3) Presumption as to legislative action. (4) Discretion of town officers: statute construed.* CONTRACTS: TOWNS. *(5) Covenant of town not to sell railway stock.*

1. Whether the statute of limitations is applicable directly, or will be applied by way of analogy, to a proceeding by *mandamus*, is not here decided.
2. Where a *mandamus* to compel the issue of town bonds to a railway company in exchange for its stock, was not asked for until nearly six years after the relator's right accrued: *Held*, that, in exercising the *discretion*

of the court in reference to the writ, the delay would not be treated as *laches*, in the absence of any evidence that the town was injured thereby, especially as the contract was mutual, and it had been, at all times since the relator's road was built, in the power of the town to enforce an exchange of its bonds for stock of the company.

3. There is no *presumption* that, if the relator had compelled a delivery of the bonds before a certain act was passed incorporating a city which includes part of the territory of the defendant town, the legislature would have required such city to pay part of the bonded debt of the town — even if it had power to do so.

4. Ch. 93 of 1867 (under which the contract was made) did not confer upon the town officers any discretion as to issuing the bonds *after* a submission by them of the relator's proposition to a vote of the electors, and an acceptance thereof by such vote; but the agreement spoken of in the act, between such officers and the railroad company, was *preliminary* to the submission, and, when made, was a *contract* between the town and company, with an affirmative vote of the town as a condition precedent.

5. There is nothing in said ch. 93 which requires the town to sell its stock; and its contract to retain the same until the relator consents to a transfer thereof, is valid.

APPEAL from the Circuit Court for *Waupaca* County.

This is an appeal by the defendants from an order overruling a demurrer to the relation, and a motion to quash an alternative writ of *mandamus* commanding the defendants to execute and issue to the relator the bonds of the town of Mukwa (of which town they are the chairman of the board of supervisors and town clerk respectively) in exchange for the stock of the relator, pursuant to a vote of the electors of said town. The motion to quash the alternative writ is founded exclusively upon alleged defects in the relation, and presents the same questions presented by the demurrer thereto. It is alleged in the relation that the relator was organized by the name of "The Green Bay & Lake Pepin Railway Company," by virtue of chapter 540, P. & L. Laws of 1866; that in 1873 its name was duly changed to "*The Green Bay & Minnesota Railroad Company;*" and that before the seventh day of August, 1868, the relator made and delivered to the town clerk of said town of Mukwa a definite proposition in writ-

ing, duly executed, that said town deliver to the relator its bonds for $100 each, to the amount of $35,000, payable to the treasurer of the relator, in exchange for 350 shares of its capital stock—one-half of said bonds to be payable in ten years and the other half in fifteen years from delivery, and all of them to have eight per cent. interest coupons attached, payable at a certain bank in the city of New York. The proposition further provided that the relator should be entitled to delivery of the bonds whenever the railway of the relator should be "graded and ironed from Green Bay to the town line of said town of Mukwa, and within one-half mile of Wolf river, in the village of New London;" also that the stock to be issued therefor "shall not be negotiable or transferable to other parties, unless by special agreement with and consent of" the relator.

The relation alleges further, that, immediately after receiving such proposition, the town clerk called a meeting of the board of supervisors of the town to consider the same, which meeting was held; and that at such meeting it was deemed expedient to publish notice of a meeting of the voters of the town to vote upon such proposition. Facts are alleged showing that such meeting was duly and regularly called and held; that a vote was taken upon the proposition and duly canvassed; that such vote was in favor of the proposition; and that the statement thereof required by the statute was duly made, signed and filed, from which it appears that a majority of the legal voters of the town who voted thereon, voted "for the railway proposition." The grading and ironing of the relator's railway between the points mentioned in the proposition, on or before December 19, 1871; the construction thereof through the town of Mukwa in the following year, and its operation ever since; the tender of a stock certificate by the relator to the chairman of the board of supervisors and town clerk of that town, for 350 shares of the capital stock, and a demand that those officers execute and deliver to it the

bonds specified in the proposition, made March 3, 1872, and again December 6, 1877; and the refusal of those officers on both occasions to comply with such demand — are alleged in the relation.

The alternative writ of *mandamus* was issued December 15, 1877. Special grounds of demurrer to the relation are assigned as follows: "*First*. The vote mentioned in the petition of the relators is void, such vote requiring the principal and interest of the bonds to be paid at a bank in New York city, when by law the town can only pay its obligations at the treasury of said town. *Second*. The application by the relators to said board of supervisors to subscribe the stock and issue the bonds in pursuance of the vote set forth in the petition of the relators, not having been made for more than six years after the vote was taken, is a waiver and abandonment of the right of the relators under said vote, and said application now comes too late. *Third*. It is a matter of discretion with said board of supervisors, whether they will issue the bonds and make the subscription in pursuance of the vote. *Fourth*. The vote mentioned and set forth in the petition of relators is void, because it does not comply with the act under which the vote was taken. *Fifth*. It does not appear by the petition of the relators that there was any legal meeting of the board of supervisors of said town for the purpose of submitting the proposition of the railroad company to a vote of the people."

For the appellants, there was a brief by *Myron Reed* and *E. L. Browne*, and oral argument by *S. U. Pinney*.

For the respondent, there was a brief by *Theo. G. Case*, as attorney, with *Hastings & Greene*, of counsel, and oral argument by *Mr. Hastings*.

LYON, J. The validity of chapter 93, P. & L. Laws of 1867, under which the proceedings set out in the relation were taken, was adjudicated by this court in *Oleson v. The Green Bay*

*& Lake Pepin Railway Co.*, 36 Wis., 383; and in *Bound v. The Wisconsin Cent. Railroad Co.*, 45 Wis., 543, the principle of that adjudication was reäffirmed. Indeed, the learned counsel for the defendants freely concede the validity of the act. Hence, the question to be determined is, Does the relation state facts sufficient to show that the relator is entitled to a writ of *mandamus* as prayed? A ground of demurrer was assigned *ore tenus* in the argument, which will first be noticed. It is claimed that the relator is not entitled to relief by *mandamus* because of its long delay in applying for the writ. The relator's right to a delivery of the bonds voted by the town of Mukwa (if it has such right) did not accrue until March, 1872, when the same were first demanded; and this proceeding was instituted within less than six years thereafter. The statute of limitations, therefore, whether it is directly applicable to such a proceeding, or whether it be applied to it by analogy, as in the case of prescriptions by adverse user *(Rooker v. Perkins*, 14 Wis., 79), is not a bar to the proceeding.

It may be conceded, however, that the court has some discretion in the matter of granting or refusing the writ, and that it will not be granted if the relator has delayed unreasonably, to the prejudice of the defendant, to apply for it.

In this case there was a delay of nearly six years, which is not explained or excused; and if it appeared that the town of Mukwa would be more seriously injured by being compelled to issue the bonds now than it would have been had it been compelled to do so earlier, we might hesitate to say that a *mandamus* ought to issue. The only fact of which we can properly take notice affecting this question of increased injury, is, that by chapter 362, P. & L. Laws of 1869, and chapter 485, P. & L. Laws of 1870, the legislature detached certain territory from the town of Mukwa and included the same in the village of New London, without providing that the village should be liable for a proportionate share of the indebtedness of the town which might accrue should the relator thereafter

earn the bonds in question. It is a sufficient answer to the argument founded on this fact, to say, that since the bonds were earned and demanded it does not appear that any territory has been taken from the town, or that anything has occurred to impair its ability to perform its contract with the relator. But, if it did so appear, the fact remains that it was in the power of the town to issue its bonds at any time after the relator had complied with the contract on its part, and compel the relator to accept them in exchange for the stipulated amount of its capital stock. The contract was mutually binding upon both parties. *Bound v. Wis. Cent. Railroad Co.*, 45 Wis., 543, and cases cited. This fact is not without significance. If there has been laches, the relator is not alone the guilty party.

Reference has been made to chapter 162 of 1877, incorporating the city of New London, containing the territory formerly included in the village. Counsel say that had the relator proceeded diligently and compelled a delivery of the bonds before that act was passed, presumably the legislature would have inserted a provision requiring the city to pay a part of the bonded debt of Mukwa. We think there is no such presumption. Besides, had such a provision been inserted in the city charter, it is a very grave question whether it could be sustained.

We are entirely unable to say, from the record before us, that the delay of the relator in commencing this proceeding has in any manner prejudiced the town, and we conclude that such delay is not of itself sufficient ground for denying the relief sought.

If the relator is entitled to the delivery of the bonds, *mandamus* to the town officers who are charged by law with the duty of executing and delivering them, requiring them to do so, is the proper remedy. Of this there is no room for question or doubt.

The specific grounds of demurrer assigned seem to cover

every other possible objection to the sufficiency of the relation; and these will be briefly considered in their order, without reference to their relative importance:

1. The fact that the proposition of the relator, which was accepted by the town of Mukwa, required the interest coupons (and perhaps the principal of the bonds) to be paid at a bank in the city of New York, does not, we think, invalidate the contract. We are aware of no constitutional or statutory principle or provision which was violated by that stipulation. Certainly there is nothing in chapter 93 of 1867 which prohibits it. If authorities are necessary to support the stipulation, they may be found cited in the brief of counsel for the relator.[1] But this objection is not pressed by counsel for the defendants.

2. All has been said, in considering the question of laches, that it is deemed necessary to say concerning the effect of the statute of limitations. If the statute is applicable to the case, it is clear that it did not commence to run when the town voted to issue its bonds, but when the demand for the bonds was made, which was less than six years before this proceeding was commenced.

3. It is claimed that chapter 93 of 1867 gave the town board of supervisors a discretion to issue the bonds or to refuse to issue them, after the town voted to accept the proposition of the relator. This position is founded upon a clause in section 1 which provides that the town may issue its bonds "in such manner as may be agreed upon by and between the directors of said railway company and the proper officers" of the town, as thereinafter provided. Section 2 confers upon the town board of supervisors power to submit any proposition of the railway company to a vote of the electors of the town, or to refuse to do so, in the discretion of

[1] The cases cited to this point in the brief for the relator were *E., I. & C. R. R. Co. v. Evansville*, 15 Ind., 395; *Meyer v. City of Muscatine*, 1 Wall., 391; and *Lynde v. The County*, 16 id., 7-13. — Rep.

the board. The meeting of the board is called "to take into consideration the proposition of said company," and the board shall publish a notice of election, "*if deemed expedient.*" The board may dictate the terms of the proposition by refusing to submit it to the electors unless it conforms to the views of the board, and the company is powerless to compel a submission.

When the terms of the proposition are settled and agreed upon by the board of supervisors and the company, the contract is made between the town and the company; but it is a contract upon condition precedent, and inoperative until the condition is performed. That condition is a vote of the electors duly taken in favor of the proposition. The electors cannot change the contract. They can only affirm or disaffirm it. If they affirm it, the contract becomes operative and binding upon both parties. If they disaffirm it, neither is bound. It is very clear that this preliminary contract, or contract upon condition precedent, is referred to in section 1, and not a contract to be made, ratified or controlled by the board after an affirmative vote of the electors on the proposition. If possible, this is made more clear by section 4, which provides, without qualification or reservation, that if the vote on the proposition be affirmative, it shall be the duty of the proper officers (and in this case these defendants are the proper officers), upon receiving the stock in conformity with the proposition, to issue and deliver to the railway company the bonds called for by such proposition. The contract is made by the proper town officers and the railway company. The condition precedent, upon which its efficacy as a contract depends, is performed by the affirmative vote of the electors; and nothing remains but for the chairman of the board of supervisors and town clerk of the town, upon tender of the specified railway stock, to receive it, and issue and deliver the bonds according to the contract. This duty is purely ministerial, and *mandamus* is the appropriate process to compel performance of it, if performance is refused.

The State ex rel. The G. B. & M. R. R. Co. vs. Jennings and another.

We find nothing in any of the cases cited in opposition to the above construction of chapter 93'of 1867. Those cases are decided upon statutes differing essentially in principle from chapter 93, and are not applicable here. We conclude that when the relator tendered the stock to the defendants, and demanded the bonds specified in the proposition, there was a valid contract between the town and the relator for the issue of the bonds, and the defendants were absolutely required by the statute to comply with such demand.

4. The next objection to the sufficiency of the relation is, that it appears on its face that the terms of the contract do not comply with chapter 93 of 1867. The point of the objection is, that the restriction in the contract upon the negotiation by the town of the railway stock received for its bonds invalidates the contract. There is nothing in chapter 93 which compels the town to sell its stock. It may hold the same as long as it chooses to do so. And if it may hold it at will, no good reason is perceived why it may not contract to hold it until the relator consents to its transfer. We think the objection is not well taken.

5. Lastly, the objection that the relation fails to show a legal meeting of the board of supervisors for the purpose of submitting the proposition to the electors of the town, is not sustained by the relation itself. That instrument alleges a meeting of the board for that purpose, and presumably it was a *legal* meeting.

*By the Court.* — The order of the circuit court is affirmed.