The State ex rel. Donnelly vs. Hobe.

THE STATE EX REL. DONNELLY, Appellant, vs. HOBE, County Treasurer, Respondent.

*March 21 — April 6, 1900.*

*Municipal corporations: Superior city charter construed: Ownership of assessment liens: Collection: Duty of county treasurer: Mandamus.*

The city charter of the city of Superior provides generally for making up the annual city tax roll and extending thereon all general and special taxes against property mentioned and valued therein, upon a uniform percentage thereof, and also for extending on such roll special assessments for street improvement in a separate column against 'the property affected thereby for the benefit of the owners of the certificates representing such assessments, and for the collection of such burdens on property, and for the disposition of all taxes collected, not specially mentioning such assessments; also, generally, that delinquent returns shall be made to the county treasurer according to the laws regarding such returns by town treasurers. It also specially provides, in plain language, for the return· of special assessments not seasonably paid to the city treasurer, and the enforcement thereof thereafter in the manner other delinquent taxes are enforced, "except that all moneys collected by the city treasurer and all moneys collected by the county treasurer or county clerk, on account of such taxes, shall be delivered or paid to the owner of the same, on demand, upon surrender of such certificate." *Held:*

(1) There is no room to work out, by judicial construction, a theory that the special assessment liens, or money collected in the enforcement thereof in any way, at any time, under any circumstances, become the property of the public represented by the city or county.

(2) The plain legislative intent is that special assessment liens shall constitute private property till actually discharged by payment to the owners thereof, or to the city treasurer, county treasurer, or county clerk, for the use of such owners, and that such liens shall be enforced as such private property through municipal machinery as the agent of such owners.

(3) The rule applies that, where there is a general provision in a statute covering an entire subject, and a special provision plainly covering some particular part within the scope of such general provision, such special provision must prevail.

(4) The plain intent being that the special assessment liens shall remain private property from first to last, by necessary implication the assessments extended upon the tax roll to discharge such liens must be returned delinquent, if at all, separate from all other taxes, and thereafter be enforced separate from all other taxes, down to and including the issuance of certificates of sale on the tax sale.

(5) If the money to discharge a special assessment lien comes into the hands of the county treasurer at any time before the sale of the property to enforce it, he thereby becomes a trustee thereof for the certificate holder. If the property be bid in at the tax sale for the county and a certificate of sale be taken accordingly, the treasurer, in his official capacity, will thereby become the trustee of such certificate for the owner of the special assessment lien; and if such certificate be sold by the county treasurer in the manner other tax certificates are sold, the money received therefor will constitute a trust fund in his hands for the benefit of the owner of the special assessment certificate.

(6) If the county treasurer receive a tax-sale certificate or money on account of a special assessment returned to him delinquent in either of the methods above indicated, it is his duty to deliver the same to the owner of the special assessment certificate on demand therefor and the surrender of such certificate; and a failure so to do will entitle the owner of such certificate to the remedy by *mandamus* to enforce his rights.

[Syllabus by MARSHALL, J.]

APPEAL from an order of the circuit court for Douglas county: A. J. VINJE, Circuit Judge. *Reversed.*

Such proceedings were duly taken by the proper officers of the city of Superior, pursuant to subch. XIII of the charter of such city (ch. 124, Laws of 1891), that certain street-improvement certificates were duly issued for special assessments charged to lots abutting on such street for the improvement thereof, and thereafter the relator became the owner of such certificates. The manner of enforcing collection of such special assessment liens for the benefit of the owners thereof, and the manner by which such owners obtain their money, are indicated in sec. 129 of the charter in the following words:

"The comptroller's statement of the special assessments

to be placed in the next tax roll shall include an amount sufficient to pay said certificates with interest thereon, at the legal rate, from the date of such certificate to the time when the city treasurer is required to make return of delinquent taxes; and thereafter the same proceedings shall be had as in case of other taxes, except that all moneys collected by the city treasurer and all moneys collected by the county treasurer or county clerk, on account of such taxes, shall be delivered or paid to the owner of the same, on demand, upon surrender of such certificate."

Pursuant to such provision of the charter, there·was extended upon the tax roll of the city of Superior, against the proper descriptions of land, special assessments representing the relator's improvement certificates. The owners of the lots affected thereby failed to pay such assessments within the time allowed for the city treasurer to collect the same, and they were therefore returned delinquent to the county treasurer as other delinquent taxes of the city were returned, as the charter directs. After such assessments were collected by the county treasurer, the relator tendered his certificates to such treasurer and demanded payment thereof, which was refused. Thereupon the·relator made his verified petition setting forth the aforesaid facts, and, on due notice to the county treasurer, moved the court for a writ of *mandamus* requiring him to comply with the relator's demand for the money collected on the special assessments as stated. The motion was denied, and the relator appealed.

*T. L. McIntosh*, for the appellant.

For the respondent there was a brief by *Isaac Ross*, district attorney, and *Michael S. Bright*, and oral argument by *Mr. Bright*.

MARSHALL, J. The theory of appellant is that all money collected by the county treasurer on the special assessments was collected for his use by express provision of the city

charter and is his private property; while the theory of respondent is that such assessments, when returned delinquent, became the property of the county the same as other delinquent taxes; that as soon as they were credited to the city of Superior by the county treasurer, pursuant to the general laws of the state regulating the manner of dealing with delinquent taxes, the city, in contemplation of law, had collected them and was liable to the relator for the amount of his certificates, and his recourse for payment thereof was solely to the fund thus accumulated in the hands of the city treasurer. The trial court adopted the latter theory. Which of the two theories is right is by no means free from difficulty. The question must be solved by a careful examination and comparison of the provisions of the charter of the city of Superior covering the subject.

Sec. 27 of the charter (ch. 124, Laws of 1891) provides the basis for the action of the city clerk in placing special assessments for street improvements in the city tax roll, in the following language: "He [the city comptroller] shall make and deliver to the city clerk a list of all certificates for the payment of which special taxes are to be levied in each year, in time for the same to be inserted in the tax roll, in the form of a schedule of special taxes." At this point it will be noted that special assessments are spoken of as taxes. In subch. XII, which treats of assessment and collection of taxes, special assessments are uniformly spoken of as distinct from taxes. Sec. 102 in such subchapter provides that the city clerk shall place before the common council, each year, certain information for their consideration in determining the amount of taxes to be raised for such year, but such requirement does not include anything relating to special assessments. The scheme of the charter is that no action of the common council shall be required as to the placing of such assessments in the tax roll. They are thus placed from information furnished directly to the

city clerk by the comptroller. Sec. 102 further provides
that, upon receiving the information required to be placed
before the common council in the manner therein indicated,
it shall, by resolution, levy such sums of money as may be
sufficient for the several purposes for which taxes are au-
thorized. The next section provides that the clerk, upon a
uniform percentage, shall extend upon the tax roll, in the
manner therein indicated, the taxes levied by the common
council, *and shall also enter and extend upon the tax roll all
special assessments* and school taxes required to be entered
thereon. Sec. 106 provides that, "*All special assessments
shall be carried out on the tax roll in a separate column or
columns* opposite the lots or tracts upon which the same
may be a lien, and the city treasurer shall have the same
authority with reference thereto as if the amount of such
lien was a general tax." That indicates that the scheme of
the charter is that special assessments shall constitute spe-
cific liens on specific property for the benefit of the owners
of such liens; that such assessments are to be extended
upon the tax roll for collection solely for the benefit of such
owners; and that they are to be considered separate and
distinct from taxes, strictly so called, meaning all burdens
on property generally whether imposed for a general or a
particular purpose.

The language of sec. 106, that the city treasurer shall have
the same authority as to special assessments as in case of
general taxes, does not indicate that such assessments are
treated at that point as special taxes, strictly so called. The
term "general tax" is used with reference to the manner
of imposing the tax upon property, in that it is levied thereon
generally, by a uniform percentage, according to the value
thereof. Taxes are spoken of as special if levied for a spe-
cial purpose, and general if levied for some of the ordinary
purposes of municipal government; but whether taxes be
levied for a general or special purpose, if placed upon prop-

erty as a whole in proportion to the value thereof, they are in a proper sense general taxes, as distinguished from special assessments made for street improvements.

Up to this point it is quite clear that the charter indications are that money collected on account of special assessments belongs to the owners of the certificates; that the municipal machinery is put in motion for the collection thereof solely for the benefit of the owners of the assessment liens, and that the municipality, at no point, can obtain any ownership of such liens or the money received in process of enforcing them.    Every step in the proceedings to enforce such liens is required to be taken by municipal officers pursuant to a municipal agency for the owner of the certificates, created by law.

It has been repeatedly held by this court that the sole duty of a city, under charter provisions for the payment for street improvements by special assessments upon the property benefited, is to use the proper machinery for the collection of the assessments in the manner indicated by the charter; that the expense of the assessments cannot be made a general city liability in any way.    *Finney v. Oshkosh,* 18 Wis. 210; *Fletcher v. Oshkosh,* 18 Wis. 229; *Whalen v. La Crosse,* 16 Wis. 271; *Hall v. Chippewa Falls,* 47 Wis. 267; *Heller v. Milwaukee,* 96 Wis. 134.

It is not claimed by respondent that special assessments, under the charter of the city of Superior, can become a general liability of the city, but it is said that the charter provides that if such assessments be not paid to the city treasurer, after being placed in the tax roll for collection, within the time allowed by law, they shall, with all other delinquent taxes of the city, be used to discharge the liability of the city to the county, and, if in excess of the amount required for such purpose, to obtain a credit with the county to be discharged by it by payment to the city as fast as collections are made; and that as soon as the city thus obtains

the benefit of the special assessments, it should be treated as having in its hands the money to pay the owners of the certificates, though the liens against the lots be not yet discharged. The idea is that, by the manner in which the delinquent special assessments are required to be treated, the county becomes the purchaser of the special assessment liens from the city with the right to enforce them for its own benefit, and the city becomes the trustee of a fund actually in hand to take up the special assessment certificates the same as if such fund were created by collecting the money of the lotowners affected by such assessments. That is based on the language of sec. 111 of the charter, which reads as follows: " Out of the taxes collected the treasurer shall first pay the state tax to the county treasurer, and shall then set aside all sums of money levied for school and library taxes, then taxes for the payment of principal and interest on the public debt, then moneys levied for the payment of judgments, then all sums raised as special taxes in the order in which they are levied, then the taxes for bridge purposes, then for fire purposes, then for street and other public improvements, and lastly county-taxes. Delinquent returns shall be made to the county treasurer, the same in all respects as required by the general laws of this state, and thereafter such proceedings shall be had with reference to the delinquent taxes so returned to the county treasurer as are provided for in case of delinquent returns from towns."

Now, if the theory of the respondent be correct, we must be able to find in the section quoted where the treasurer is required to set aside money to provide for the payment of special assessments. That is evident, for he cannot be compelled to pay such assessments out of money set aside for some other purpose, and a construction would be too unreasonable to be adopted which would result in holding that special assessments can be used by the city to pay its liabilities to the county and there be no equivalent fund for im-

mediate use, with which to take up the special assessment certificates.

In the opening lines of the section it says that the amounts placed in the tax roll of the city for the various municipal purposes shall be satisfied out of the *taxes* collected. In substantially all previous provisions of the charter, rightly considered, the term "tax" is used as distinct from special assessments, so it is reasonable to say that special assessments, at this point, are not included in the term "taxes collected." One of the purposes to be satisfied by the setting aside of money from taxes collected, is "special taxes in the order in which they are levied." The term "special taxes" at this point evidently refers to taxes levied by resolution of the common council for some special purpose. The term, "in the order in which they are levied," can have no reference to special assessments. Such assessments are not "levied" in the sense in which that term is obviously used in the section. Again, if the delinquent return of special assessments results in there being an equivalent of money in the hands of the city treasurer for the payment of such assessments, there can be no priority of one of such assessments over another. So it is very evident that the term "special taxes" has no reference to special assessments.

The only other purpose mentioned in the section, that the city treasurer is required to satisfy out of taxes collected by him, which by any possibility can include special assessments, is covered by the term "taxes raised for street and other public improvements." Consistent with the entire scheme, up to this point, it is reasonable to say that the term "taxes" does not here include special assessments, because, as indicated, the two species of burdens are uniformly differently designated, and the language "street and other improvements" refers to taxes levied by resolution of the common council. The special assessments, if respondent's theory be correct, can all be absorbed by the city by using

the same to pay its liabilities to the county, without any fund being left in the city treasury with which to pay the assessment liens to the owners thereof.   That, as before suggested, is too unreasonable to be adopted, even if the question of the absolute invalidity of such a scheme were not raised.

But the section says that the delinquent return shall be made to the county treasurer the same in all respects as required by the general laws of this state relating to towns, and that thereafter such proceedings shall be had with reference to the delinquent taxes so returned as are provided for in case of delinquent returns from towns.   That obviously incorporates the general law of the state, regarding the return of delinquent taxes from towns, into the city charter.   However, if it refers to special assessments as well as to taxes strictly so called, still it must be noted that the distinction in all the preceding provisions of the charter between taxes and special assessments was in the legislative mind at this point.   For while provision was made for the delinquent return in general language — including all burdens upon property, whether in the form of taxes strictly so called or special assessments — when it came to provide for the treatment of liens upon property represented by the delinquent return after coming to the hands of the county treasurer, only taxes are mentioned, which may reasonably be said to mean taxes imposed generally upon property.

It is certainly reasonable to say, if there be a provision in the charter specially referring to the treatment of special assessments, that only taxes strictly so called were intended to be covered by sec. 111, because, as before indicated, no provision is made for setting aside, by the city treasurer, for the benefit of the owners of special assessment liens, an equivalent for such as are included in the delinquent return. So such liens must, it would seem, follow the lands and be owned by the owners of the special assessment certificates

after the delinquent return the same as before, and there must be some machinery provided for the enforcement of such liens. Any other construction of the charter provisions would be so unreasonable as not to admit of adoption, at least if one can be discovered in harmony with the apparent scheme of the charter and the rights of owners of special assessment liens to a continuance of such liens till a fund shall have been actually provided in the hands of the agent of the lien claimants to take up their certificates.

At this point we are met with *Sheboygan Co. v. Sheboygan,* 54 Wis. 415, where it was held that the principle of sec. 1114, R. S. 1878, is that the county shall assume all delinquent taxes and become liable to the municipality returning the same, and that if such return includes special assessments for street improvements they shall take the same course as other delinquent taxes; that the word " taxes," as used in the section, includes taxes of every nature, special assessments as well as general taxes, and that in case of a special assessment lien, it is discharged, so far as the certificate holder is concerned, as soon as the municipality obtains credit for the delinquent return representing the same, and that such certificate holder is entitled to immediately call upon the city treasurer for his money. That might rule this case if there were nothing in the charter under consideration clearly excepting special assessments from the provisions of sec. 1114, Stats. 1898, regarding the ownership by the county of tax liens returned delinquent. Sec. 129 of the Superior charter provides specially for the collection of special assessments for the benefit of the owners of the assessment certificates, treating the assessment liens as private property from the time the amount thereof is extended on the tax roll until finally realized, whether by payment before or after the assessments are returned delinquent to the county treasurer. The language of the section is as follows: " The comptroller's statement of the special assess-

ments to be placed in the tax roll shall include an amount sufficient to pay said certificates with interest thereon, at the legal rate, from the date of such certificate to the time when the city treasurer is required to make return of delinquent taxes; and thereafter the same proceedings shall be had as in case of other taxes, except that all moneys collected by the city treasurer and all moneys collected by the county treasurer or county clerk, on account of such taxes, shall be delivered or paid to the owner of the same, on demand, upon surrender of such certificate." That language seems plain. It makes the city, by its treasurer, the agent of the owner of the special assessment liens for the collection thereof, till his delinquent return shall have been made, and thereafter the county such agent by its county treasurer and county clerk.

It is impossible to adopt the theory upon which this case was decided in the court below, and which is insisted upon here by respondent, and give effect to the words of sec. 129, "all moneys collected by the county treasurer or county clerk, on account of such taxes, shall be delivered or paid to the owner of the same, on demand, upon the surrender of such certificate." It will be noted that the holders of certificates are expressly referred to as the owners of the special assessment liens down to the time of their actual collection, whether by the city treasurer or the county treasurer or the county clerk. The idea plainly expressed is that such liens remain upon the lands charged, as the private property of the certificate holders, until an equivalent therefor in money shall have been actually placed in the hands of some one of the officers mentioned for payment to such holders upon the surrender of their certificates. That is wholly inconsistent with the theory that the certificate holders cease to be the owners of the special assessment liens as soon as the tax, so called, extended upon the tax roll for their discharge, passes into the hands of the county treasurer as a part of the delinquent return from the city treasurer.

The whole scheme of the charter, from first to last, is that, while proceedings for the collection of special assessments must be the same as for the collection of general taxes, they are to be treated as purely private property and kept, at every step, separate and distinct from other taxes, the public having no interest in them whatever. The special assessment liens are required to be returned delinquent if not seasonably paid to the city treasurer, but to be kept separate by such return necessarily, and thereafter separately enforced, if not seasonably paid, by advertisement and sale of the property affected thereby.

The provision to the effect that special assessments shall be treated as other taxes does not indicate that they are to be confused with other taxes and that the entire amount, composed of special assessments and general taxes, is to be treated in one sum as a lien against the property affected. Such assessment liens cannot be reasonably treated as solely the private property of the certificate holders except by a delinquent return, keeping special assessments separate from other taxes, and subsequent proceedings to enforce such liens, if such proceedings become necessary, including advertisement of the lands affected by the assessment liens for sale separately therefor and the issuance of certificates of sale which shall not include any tax liens that belong to the public. In case lands, sold for the purpose of enforcing special assessment liens, are bid in by the county, the certificates of sale, when issued, are not the property of the county, but of the holders of the special assessment certificates. The county, in such circumstances, becomes a trustee of the tax-sale certificates for the actual owners thereof, and the treasurer should turn the same over to them — the holders of the special assessment certificates — on demand therefor and surrender of such certificates. In case of such a sale and of the lands being bid off by some person other than the county, or the county treasurer bidding off the property for the county and then selling the certificates, the money received

by the county treasurer becomes a trust fund for the owner
of the special assessment certificates, which should be turned
over to him under the plain and mandatory language of
sec. 129 of the charter, upon his demand therefor and sur-
render of such certificates.

The foregoing is the only reasonable construction of the
charter provisions referred to, that will give effect to all of
them.   Any other construction would leave the plain lan-
guage of sec. 129, as to payment by the county treasurer and
county clerk to the owner of the special assessment lien, of
money coming into their hands on account of such lien,
without any effect whatever.

By due regard to familiar rules for statutory construction,
the foregoing indicated result is reached by a logical course
of reasoning.   A general provision, covering a subject as a
whole, must be deemed to have been intended as subordinate
to a particular provision relating to a particular element in-
cluded in such subject.   Again, when there is a particular
clause of an act, or a special act, and a general clause or act
the language of which may be reasonably, though not nec-
essarily, construed to include the subject of the particular
clause or act, the presumption is that the latter was intended
as an exception.   *Mason v. Ashland,* 98 Wis. 540.   Both of
such rules apply to secs. 111 and 129 of the charter of the
city of Superior.   The language of sec. 129, in its literal
sense, must be taken either as providing specially for street
assessment liens, in which case the special provision would
prevail over any general provision covering a subject that
may reasonably be said to include such liens, or it plainly
excepts special assessments out of the general provision of
sec. 111.   It seems that the clear legislative intent, by the
language of sec. 129, was to provide for handling delinquent
special assessments as private property separate and distinct
from delinquent taxes, strictly so called.   It must prevail
whether the two sections are in harmony or not.   But in

our judgment they are in harmony. It is reasonable to con-
clude that sec. 111 only refers to taxes other than special
assessments. Harmony, not confusion, is to be sought for
by statutory construction. Conflicts between different pro-
visions of a statute are not to be held to exist if harmony,
by any reasonable construction of them, can be discovered.
The true rule has often been stated to be that where two
acts or parts of acts are reasonably susceptible of a construc-
tion that will give effect to both and all the words of each
without violence to either, it should be adopted in preference
to one which, though reasonable, leads to a conclusion that
there is a conflict. There is no conflict between different
provisions of a statute if there is a reasonable meaning of
the words used, considering the manner of their use, which
will bring them into harmony. *Att'y Gen. ex rel. Taylor v.
Brown,* 1 Wis. 513; *Att'y Gen. v. Railroad Cos.* 35 Wis. 425;
*Mason v. Ashland,* 98 Wis. 540.

The suggested difficulties in administering the charter of
Superior, on appellant's theory, in that after the delinquent
taxes reach the county treasurer there is no way by which
he can tell what part constitutes special assessments and
what part refers to other taxes, all disappear when it is con-
sidered, as it must be, that the provision requiring special
assessments to be returned delinquent and to be thereafter
treated in the same manner as other delinquent taxes, but
for the sole benefit of the owners of the special assessment
liens, by necessary implication requires such assessments to
be specifically noted in the delinquent return, and that in
the advertisement of the sale of the lands to enforce the
assessment liens they shall be treated separate from other
delinquent taxes. According to the relation before us, the
special assessments in question, prior to the making of such
petition, were paid to the county treasurer; therefore it was
his plain duty, on the relator's application for the money

thus collected and offer to surrender his assessment certificates, to have complied with such application.

*By the Court.*— The order of the circuit court is reversed, and the cause is remanded with directions to issue a peremptory writ of *mandamus* in accordance with this opinion.