State ex rel. Portage County Drainage District, Respondent, vs. Newby, County Treasurer, imp., Appellant.

*April 2—April 29, 1919.*

Drains: Delinquent assessments: Statutes construed: Penalties belong to district: Remedies: Mandamus to county treasurer: Claim against county: Limitation of actions: Waiver: Delay in mandamus action.

1. Under sub. 5, sec. 1379—25, Stats., the provisions of secs. 1090, 1112, and 1129 relating to penalties in the case of delinquent general taxes apply to the collection of drainage assessments.
2. The word "principal" in sub. (b) and sub. (c) of sec. 1379—25a, Stats., relating to drainage district accounts, includes, in addition to the amounts of the delinquent drainage assessments, the penalties of two and twelve per cent., above referred to, imposed by secs. 1090, 1112, and 1129; the word "face" in sub. (d) of sec. 1379—25a has the same meaning; and the word "interest" in said sub. (d) means the interest on the certificates from the date of the sale to the county up to the date of the deed.
3. The penalties so added by law to delinquent drainage assessments belong to the drainage district, and not to the county. The county, in all its transactions relating to the collection of such assessments, acts in a trust capacity only for the benefit of the drainage district.
4. Where the county treasurer has collected the penalties upon delinquent drainage assessments and still has the moneys in his possession, the proper remedy is by *mandamus* to compel him to turn such moneys over to their owner, the drainage district. Under such circumstances the district has no remedy against the county itself, and disallowance of a claim filed against the county for the moneys in the treasurer's hands is of no consequence.
5. Whether the statute of limitations applies to actions of *mandamus* is not decided. *It seems* that long and unreasonable delay in commencing the action will be ground for refusing relief, especially where such delay has been prejudicial to respondent's rights; but whether there has been such delay must depend on the facts of the particular case.
6. The objection that an action is barred by the statute of limitations is waived if not taken by demurrer or answer.

. Appeal from an order of the circuit court for Portage county: Byron B. Park, Circuit Judge. *Affirmed.*

State ex rel. Portage Co. D. Dist. v. Newby, 169 Wis. 208.

This is an action of *mandamus* brought by the trustees of a drainage district to compel the county treasurer of Portage county to turn over to the drainage district board the penalties upon delinquent drainage assessments which have been retained by the county treasurers of Portage county during the years 1910 to 1917, inclusive. The action was originally brought against one Hebard, who was county treasurer from 1910 to 1914, as well as against the present treasurer, *Newby,* and the county was also made a party. All the defendants joined in the motion to quash and the alternative writ was dismissed as to the defendants Hebard and Portage county, but as to the appellant, *Newby,* the motion was denied, and from that denial *Newby* appeals. The petition states that the moneys are still in the county treasury.

For the appellant there was a brief by *J. R. Pfiffner,* district attorney, and by the *Attorney General* and *E. E. Brossard,* assistant attorney general, of counsel, and a reply brief signed by *Mr. Pfiffner;* and the cause was argued orally by *Mr. Pfiffner* and *Mr. Brossard.*

For the respondent there was a brief by *Nelson & Hanna* of Stevens Point, attorneys, and *B. M. Vaughn* of Grand Rapids, of counsel, and oral argument by *T. H. Hanna.*

WINSLOW, C. J. The basic question presented in the case is whether the penalties which are added by law to drainage assessments when they are allowed to remain unpaid and go to tax sale belong to the county or to the drainage district. The trial judge held that they belonged to the drainage district, and we think his conclusion correct.

The statutory provisions governing the formation and management of drainage districts are of considerable length and it would hardly be useful to attempt to set them forth in detail; they will be found in the Statutes, beginning with sec. 1379—11 and running to and including sec. 1379—40. The general plan is not complicated. On application of a majority of the adult owners representing at least one third in

area of the wet lands in any swampy district, the circuit court
after due notice and hearing may, if the public health and
welfare will be promoted thereby and the benefits will exceed
the damages and cost of construction, create the proposed
drainage district and appoint three commissioners therefor,
the district thus becoming a *quasi*-municipal corporation
with the right to sue and be sued and to borrow money with
the approval of the court necessary to carry out the powers
granted to the commissioners.    The commissioners there-
upon employ an engineer to lay out the drainage system,
make assessments of benefits and damages, and report them
fully to the court, which after due notice and trial may
modify the same either as to benefits or damages to any par-
cel and confirm the report as modified, and may also order
the assessments to be paid in instalments not more than fif-
teen in number.    The assessments of benefits become liens
on the parcels of lands on which they are respectively as-
sessed and may be paid into court at once if the landowner
chooses, but if not then they are to be paid to the commis-
sioners at a time and place fixed by the commissioners, of
which notice is given.    If they are not so paid the delinquent
parcels are certified to the town, city, or village clerk, who
enters the unpaid assessments with the interest due on the tax
roll in a separate column, and collection thereof is made in
the same manner as in the case of general taxes, with certain
immaterial exceptions.    All such assessments collected by
the local treasurer on or before the last Tuesday in March
are to be transmitted to the drainage commissioners and all
remaining unpaid are to be returned to the county treasurer,
who is required to advertise and sell the lands assessed in the
same manner as he does for unpaid general taxes, keeping
them separate, however, and issuing a separate certificate in
each case.    A deed issues on the certificate of sale as in case
of an unpaid general tax.    When no private bidder appears
the county treasurer bids off the land in trust and thereafter

holds or assigns the certificate "in trust for such drainage district," but the county does not have to pay the district any money thereon until it takes a deed of the land. The rules of law applying to the collection of general taxes and tax sales, unless in conflict with the drainage act, apply to the assessments, except that the assessment certificates draw ten per cent. interest. Sub. 5, sec. 1379—25, Stats.

Turning now to the statutes governing delinquent general taxes, we find that under sec. 1090, Stats., taxes not paid before the last day fixed by law for payment without penalty are subject to a penalty of two per cent., which the local treasurer is required to collect; also that, under sec. 1112, Stats., if the tax remains unpaid, this two per cent. is included with the tax in the statement of unpaid taxes returned by the local treasurer to the county treasurer; also that, under sec. 1129, after the return is made to the county treasurer any person wishing to discharge a delinquent tax so returned must pay, in addition to the two per cent. before mentioned, an additional penalty in the shape of interest at twelve per cent. per annum from the first day of January previous.

There is nothing in the drainage act in conflict with these provisions, hence they apply to the collection of drainage assessments. These penalties have been regularly collected by the county treasurer and they make up the amount in dispute in this action. They are added to and become a part of the assessment by virtue of the statutory provisions referred to.

Returning to the drainage act, we find that by sec. 1379—25a the county treasurer is required to keep a separate account with the drainage district, in which he credits the district with (a) all sums received in payment of drainage assessments, (b) all sums received in payment as principal on sale of drainage certificates at the tax sale (except where the sale is to the county), (c) all sums received for principal and interest on sale or assignment of such certificates after

they are bid in by the county, (d) the face and accrued interest on all certificates up to the date of the deed, where the county takes a deed to itself, (e) any and all other sums received by the county on account of the district.

With regard to these provisions the trial judge very tersely and correctly says in his opinion: "The word 'face,' used in sub. (d), is identical in meaning with the word 'principal' used in sub. (b) and sub. (c), and the 'interest' mentioned in sub. (d) is the interest from the date of the sale to the county up to the date of the deed."

It seems to us so clear that the word "principal" covers the two per cent. and twelve per cent. penalties in suit as well as the amount of the assessment itself that we do not regard discussion of the proposition as in any respect useful. When the land is sold for the assessment and the penalties, that gross sum is manifestly the principal of the certificate, and from that time interest begins to run. It follows that the sums here in dispute originally belonged to the drainage district and not to the county. This result is in entire harmony with those sections of the drainage act above referred to, which provide in substance that in all its transactions relating to the collection of drainage assessments the county acts in a trust capacity only for the benefit of the drainage district. It is also in accord with the cases in this court which hold that where, under the ordinary provisions of law, the machinery of taxation is used to collect assessments for street improvements, neither city nor county is acting for itself or in its own interest, but simply in the interest of the contractor or his assignee as a collecting agent or trustee. *State ex rel. Donnelly v. Hobe,* 106 Wis. 411, 82 N. W. 336; *State ex rel. Bank of Commerce v. Bell,* 111 Wis. 601, 87 N. W. 478.

The appellant contends that, because the statutes provide that the penalties above referred to accruing in the course of the collection of general taxes shall be collected by the county for its own use (secs. 1114, 1135, and 1144, Stats.), the pen-

alties upon delinquent drainage assessments must go in the same way. This contention, however, is completely answered if we are correct in our holding that the word "principal" as used in sec. 1379—25*a*, above referred to, includes the penalties, for, if it does, then the general provisions referred to are in conflict with the drainage law.

It is claimed (1) that *mandamus* is not the proper remedy, (2) that the action is barred because it appears by stipulation that in November, 1916, the petitioners filed a claim against the county for these sums which was disallowed by the board and no appeal taken from such disallowance, and (3) that the action is barred by the statute of limitations.

*Mandamus* is the proper remedy to compel a public officer to perform a duty arising out of his office which is presently due to be performed, and where other remedies, if any, are inadequate. *State ex rel. Bautz v. Harper,* 166 Wis. 303, 165 N. W. 281.

If, as alleged in the petition and alternative writ and admitted by the motion to quash, the county treasurer still has these moneys in his possession, there is no remedy against the county therefor. *State v. Milwaukee,* 145 Wis. 131, 129 N. W. 1101. The only adequate remedy is by *mandamus* to compel the treasurer to perform his statutory duty, namely, to turn the funds over to their owner, the drainage district, as required by sub. 2, sec. 1379—25*a, supra.* It follows necessarily that upon the facts as stated in the petition the disallowance of the claim filed against the county is of no moment, because the district had no claim against the county unless the county had used the money for its corporate purposes. *State v. Milwaukee, supra.*

The question whether the statute of limitations applies to actions of *mandamus* is one on which there is much conflict in the decisions. Merrill, Mandamus, § 314; 18 Ruling Case Law, p. 334, § 285; *State ex rel. G. B. & M. R. Co. v. Jennings,* 48 Wis. 549, 4 N. W. 641. But the question is

not before us, because the objection has not been taken by demurrer or answer, and if not so taken is waived.    Secs. 2649, 2653, 2654, Stats.

It seems that long and unreasonable delay in commencing the action will be ground for refusing relief, especially where such delay has been prejudicial to the respondent's right.    18 Ruling Case Law, p. 335, § 286.    But this question must depend on the facts of the particular case, and we do not feel that we ought to hold the delay unreasonable as a matter of law.    It may be that it will appear when the return is made and evidence taken that the delay was entirely excusable.

*By the Court.*—Order affirmed.