GROSS, Receiver, Appellant, vs. SOMMERS, County Treasurer, Respondent.

*December 9, 1936—January 12, 1937.*
*May 27—June 21, 1937.*

268

*Albert A. Mayer* of Milwaukee, for the appellant.

For the respondent there were briefs by *Herbert J. Steffes,* district attorney of Milwaukee county, *Oliver L. O'Boyle,* corporation counsel, *C. Stanley Perry,* assistant corporation counsel, and oral argument by *Mr. Perry.*

A brief was also filed by *J. H. Beuscher* of Milwaukee, as *amicus curiæ.*

The following opinion was filed January 12, 1937:

FAIRCHILD, J. According to a practice followed many years with relation to delinquent special assessments, West Allis returned to the county treasurer of Milwaukee county an unpaid special-improvement assessment, and the county treasurer accepted the return "in trust" for collection. The section of the statutes responsible for this practice and uppermost in the minds of the officials at the time was sec. 62.20 (3) (c), Stats. Under its provisions the owner of the assessment (the holder of the bond issued against it) is to place his unpaid debt in process of collection as a tax. While he remains the owner, the control over the matter of enforcing payment is left with the tax-collecting authorities. Matters must proceed for the time being as provided by statute. A governmental agency is thus made trustee for the owner. He is to have the money if collected or the tax sale certificate on the sale of the property to the county. The underlying assessment was to pay him for work done. The city is authorized, when a street improvement is contracted for, to provide for payment in part by special assessment upon the property to be benefited by the improvement. This "may be paid in cash or with certificates or bonds issued for such improvement or with the proceeds of the sale of such bonds, or both." Sec. 62.20 (1), Stats.

The issues formed by the petition, the respondent's return, and the demurrer thereto require an interpretation or construction particularly of secs. 62.20 (3) (c) and 75.34, Stats.

A very strong argument is made by the *amicus curiæ* to the point that subsequent enactments (ch. 406, Laws of 1927, ch. 472, Laws of 1929, and ch. 179, Laws of 1933) were intended to affect only the method of handling matters of this nature by city and county and do not change the rights of an owner of an improvement bond. It is unnecessary to pass upon that point in deciding this case. Both petitioner and respondent take the position that the item here involved is governed by the law existing at the time the improvement bonds were issued. That was in 1924. We do not now attempt to treat with or decide possible constitutional questions that might arise were the respondent seeking to justify his refusal of petitioner's demand by virtue of acts of the legislature after this 1924 contract was made. The county does not deny petitioner's ownership of the certificate or that it holds the certificate "in trust" for him, but does assert that because of the existence of other tax sale certificates held by it on the same real estate covered by petitioner's claim, it is, under the terms of sec. 75.34, Stats., obliged not to surrender this certificate unless the petitioner first pays the amount of taxes represented by such certificates. If the tax sale certificate now in the hands of the county treasurer is the property of petitioner, the pertinent question then is, What must he do to secure its possession?

The problem, then, is to find the true sense in which the legislature used the language it employed in writing sec. 62.20 (3) (c), Stats. That section provides that when a special-assessment certificate is not paid by November 1st of the year in which it is issued, it shall be filed with the comptroller, to be placed on the next tax roll. The section concludes with these words:

"And thereafter the same proceedings shall be had as in case of other taxes, except that all moneys collected by the city treasurer and all moneys collected by the county treasurer

on account of such taxes, and all the tax certificates issued to the county on the sale of the property for such tax, if the same is returned delinquent, shall be delivered to the owner of the same on demand."

The petitioner insists that the statute as written means that the county treasurer, under this section, is merely an agent of the certificate owner and must, on demand, deliver the tax sale certificate to him. That idea so pervades this particular statute that unless some other and controlling legislative declaration is found to limit its general scope and meaning, the contention is sound. The learned counsel for respondent offers the suggestion that secs. 75.32 and 75.34, Stats., modify the sweeping and positive language of sec. 62.20 (3) (c). He argues that, admitting the fact that the special assessment in question was returned "in trust" for collection and not "for credit," and that sec. 62.20 (3) (c) applies, yet the policy of the law in favor of the lien of a general tax, together with the specific requirements of the tax law tending to protect the county from loss where it has purchased certificates under compulsion in compliance with secs. 75.32 and 74.42 compels an interpretation of sec. 62.20 (3) (c) which will protect the county in respect to general tax certificates held by it. Sec. 75.34 (1), Stats., reads:

"(1) The several county treasurers, when no order to the contrary shall have been made by the county board, shall sell and transfer, by assignment, any tax certificates held by the county to any person offering to purchase the same for the amount for which the land described therein was sold, with interest thereon at the rate of eight per cent per annum; but every such sale shall include all certificates in the hands of such treasurer on the same lands."

That section and sec. 75.32 were in existence at the time of the enactment of sec. 62.20 (3) (c). Under this state of legislation on the subject, does sec. 62.20 (3) (c) relieve the

owner of certificates of sale for delinquent special assessments from any obligation to purchase other certificates held by the treasurer, before he can reclaim his property? In considering this question, the true character of the property must be borne in mind. While under the authorities, the assessment is a tax, its nature as a lien is recognized, and the relation of the holder as owner of the obligation is not at any place eliminated. He is entitled at some time to his compensation for work done. There exists an indebtedness to him. He is not permitted under the statutes to choose his own method of collecting what is due, but must leave that in the hands of certain officials. The statute, however, provides that the money when collected is his, and also that the certificate of sale is his to be delivered on demand. The claim that the lien does not rise in preference above the lien of general taxes might be effective under some circumstances, but this particular property, by law considered as a tax, is set apart for special treatment when submitted for collection. The law as set down in the several sections referred to treats separately with general taxes and with special-improvement assessments. In the case of *United States Nat. Bank v. Lake Superior T. & T. R. Co.* 170 Wis. 539, 174 N. W. 923, questions arose concerning the ownership of a tax sale certificate for a delinquent improvement assessment, and in the opinion written by Mr. Chief Justice WINSLOW it is said (p. 542):

"This court has very emphatically held that 'in case lands, sold for the purpose of enforcing assessment liens, are bid in by the county, the certificates of sale, when issued, are not the property of the county, but of the holders of the special assessment certificates,' the county being merely a trustee for such holders and bound to turn over the tax certificates to such holders on surrender by them of their special assessment certificates."

The intention of the legislature to establish a distinction between the two classes of taxes has been made apparent

by its acts and has been consistently acted on by contractors and officials. The two sections do not act upon identical subject matter nor are the objects of those sections identical. *Finney v. Oshkosh,* 18 Wis. *209; *Sheboygan County v. City of Sheboygan,* 54 Wis. 415, 11 N. W. 598; *State ex rel. Donnelly v. Hobe,* 106 Wis. 411, 82 N. W. 336.

Furthermore, sec. 75.34 deals with the "sale" and "transfer" by "assignment" of certificates to anyone "offering to purchase" them. Sec. 62.20 (3) (c) requires delivery to "the owner . . . on demand" and relates to a contract with private, rather than public, characteristics when compared with general taxes. These sections, in terms, deal with different subjects and different transactions, one with a transfer to a prospective purchaser, and the other with a delivery of an object, held in trust, to the owner thereof. What is the meaning of the phrase "on demand" other than to give the owner an absolute right to receive his property when he asks for it? In order to hold that the delivery referred to in sec. 62.20 (3) (c) is subject to sec. 75.34, some specific terms either in 62.20 (3) (c) or relating to it would be required. The idea of a condition precedent is foreign to the unmodified phrase "on demand."

It seems quite impossible under these statutes to justify a claim of right on the part of the county treasurer to insist upon loading the petitioner with upwards of $300 of back taxes before yielding him that of which sec. 62.20 (3) (c) and the whole scheme of special-improvement payments clearly show him to be the owner. The disadvantage resulting to the county under this arrangement came pointedly to the front during the depression when many defaults in general taxes occurred, but that does not change petitioner's rights.

The legislature, so far as special-improvement assessments are concerned, built up a method for providing compensation to those performing the work, in part out of the

public treasury and in part out of the increased value to the property resulting from the improvement, and has always kept the increased value and the lien distinct from general taxes. Prior to 1889, unless provision was made to the contrary in municipal charters, unpaid special assessments, like general taxes, were returned by the city to the county for credit. The county became the owner of the special assessment and the contractor or owner of the special-assessment certificate was entitled to his money from the city. In that year, sec. 62.20 (3) (c), Stats., was enacted as a part of the general municipal charter law. It provided in effect that the county be a trustee for the collection of the delinquent assessment and that the certificate holder continue to be the owner. *Sheboygan County v. City of Sheboygan, supra; State ex rel. Donnelly v. Hobe, supra.* The policy which reasonably appears to have dictated this arrangement evidently bore some relation to the matter of inducing contractors to undertake public improvement work by giving such assurance as such a plan would afford of payment for effort and expense in connection with the work.

The assessment here considered was returned to the county treasurer, marked "in trust," and is so held by him. His duty, therefore, with respect to the certificate resulting from the purchase by the county at the sale of the delinquent special assessment is here controlled by sec. 62.20 (3) (c), Stats.

*By the Court.*—Judgment reversed, and cause remanded with directions to issue a peremptory writ of *mandamus* in accordance with this opinion.

A motion for a rehearing was granted on March 9, 1937.

The following opinion was filed June 21, 1937:

FAIRCHILD, J. (*on rehearing*). Upon the rehearing we have re-examined the contentions of the defendant, particularly as to whether or not the provision in the statute that—

"all the tax certificates issued to the county on the sale of the property for such tax, if the same is returned delinquent, shall be delivered to the owner of the same on demand" (sec. 62.20 (3) (c), Stats.)

is applicable to the owner of bonds or interest coupons thereon which have been issued under sec. 62.20 (1), or whether the right to demand a tax certificate which has been issued under that subsection is confined exclusively to the owner of certificates issued for special improvements.

While the word "bonds" is not always used in association with the term "certificates," the frequency of its use in that connection warrants the opinion that both bonds and certificates issued under the circumstances detailed in the sections referred to are entitled to the benefit of the provision contained in sec. 62.20 (3) (c). In introducing the bond and coupon feature, the plan and purpose of the legislature was not to change the nature of the means of inducing a contractor to undertake the work by assuring him of payment or otherwise to change the incidents except to break down the payments under the certificate plan into instalments by the use of the coupons, thus to permit a partial-payment scheme. The contracts provided for in the statute to secure the special improvements—

"may provide that the part of the total cost of the improvement to be defrayed by such special assessment may be paid in cash or with certificates or bonds issued for such improvement or with the proceeds of the sale of such bonds, or both. . . ." Sec. 62.20 (1), Stats.

Both bonds and certificates are covered by the special assessment and while sub. (2) of sec. 62.20 mentions only certificates, sub. (3) (a) thereof provides that—

"After the expiration of ninety days from the date of any such certificate or bond the same shall be conclusive evidence of the legality of all proceedings. . . ."

The manner in which the annual levy is to be made for the payment of coupons attached to the bonds is provided for in sec. 62.21, where it is declared in sub. (1) (c):

"The first instalment shall be entered in the first tax roll prepared after said instalments shall have been determined as a special tax on the property upon which the special assessment was levied, and thereafter this tax shall be treated in all respects as any other city tax. One of the subsequent instalments shall be entered in like manner and with like effect in each of the annual tax rolls thereafter until all are collected."

It seems that a reasonable construction of the statutes involved requires the holding made in the original decision.

*By the Court.*—The original mandate is adhered to.