LAW ENFORCEMENT STANDARDS BOARD, State of Wisconsin, Plaintiff-Respondent,

v.

VILLAGE OF LYNDON STATION; Juneau County, Wisconsin; John Adams, Phillip Kress, and Edward Walsh, Defendants-Appellants-Petitioners.†

Supreme Court

*No. 78–456. Argued March 4, 1981.—Decided April 29, 1981.*

(Also reported in 305 N.W.2d 89.)

† Motions for reconsideration denied, without costs, on June 8, 1981.

474

For the petitioners there were briefs (in this court) by *Jean G. Setterholm, Jon P. Axelrod* and *DeWitt, Sundby, Huggett & Schumacher, S.C.,* and oral argument by *Jack DeWitt,* all of Madison.

For the respondent the cause was argued by *James C. McKay, Jr.,* assistant attorney general, with whom on the brief (in this court) was *Bronson C. La Follette,* attorney general.

Amicus curiae brief was filed (in court of appeals) by *Dianne Greenley,* project director, and *Neil Gebhart,* project assistant, for Center for Public Representation, of Madison.

COFFEY, J.  This is a review of a decision of the court of appeals[1] affirming a judgment and order of the circuit court for Juneau county, RAYMOND E. GIERINGER, presiding. The circuit court issued a peremptory writ of mandamus upholding the position of the Wisconsin Law Enforcement Standards Board (LESB),[2] respondent, directing the Juneau county village of Lyndon Station (Village), appellant, and its president and board of trustees to remove and discharge William G. Jessen as the chief of police of the village of Lyndon Station.  The question in this case deals with the authority of a village to employ a convicted felon as police chief after the LESB has deemed him ineligible for

---

[1] The decision of the court of appeals is reported at 98 Wis.2d 229, 295 N.W.2d 818 (Ct. App. 1980).

[2] The LESB was created for the purpose of certifying only qualified persons for employment in law enforcement positions and for establishing minimum educational and training standards for persons seeking employment as law enforcement officers as well as to establish minimum curriculum requirements for the training of law enforcement recruits or officers. *See:* sec. 165.85, Stats.

appointment to this position and refused to certify him as being qualified therefor citing the Wis. Adm. Code LES §2.01(1) (d), prohibiting the employment of a convicted felon as a law enforcement officer.[3] William G. Jessen, the chief of police is not a party to this review.

On April 27, 1973, Jessen, was convicted of 26 felony counts of misconduct in public office, contrary to sec. 946.12(4), Stats. 1973,[4] after being found guilty of falsifying uniform traffic citations while serving as the chief deputy sheriff for Juneau county.[5] Jessen was sentenced to 26 concurrent one-year terms in the Wisconsin state prison at Waupun for each felony conviction, but these sentences were stayed and he was placed on probation

---

[3] Wis. Adm. Code LES §2.01(1) (Feb. 1981) provides in part:

"LES 2.01 **Minimum qualifications for recruitment.** (1) Before an individual may commence employment on a probationary, temporary, part-time, or full-time basis as a law enforcement officer, that individual must have met recruit qualifications established by the board. The minimum qualifications for recruitment shall be:

". . . .

"(d) The applicant shall not have been convicted of any federal felony or of any offense which if committed in Wisconsin could be punished as a felony unless the applicant has been granted an absolute and unconditional pardon."

This rule became effective on October 1, 1970. *See:* Wis. Adm. Register, Sept., 1970, No. 177. As originally adopted, it applied to all convicted felons regardless of whether they had received a pardon. The language exempting felons who have received absolute and unconditional pardons from the prohibitive scope of this rule was added in 1975 and became effective on February 1st of that year. *See:* Wis. Adm. Register, Jan., 1975, No. 229.

[4] Sec. 946.12(4), Stats. 1973, provides:

"**Misconduct in public office.** Any public officer or public employe who does any of the following may be fined not more than $500 or imprisoned not more than one year or both:

". . . .

"(4) In his capacity as such officer or employe, makes an entry in an account or record book or return, certificate, report or statement which in a material respect he intentionally falsifies;"

[5] *See: Jessen v. State,* 95 Wis.2d 207, 209, 290 N.W.2d 685 (1980).

for two years. He completed his probation and received a certificate of discharge from the Department of Health and Social Services effective June 5, 1975.

On September 30, 1974, the village board, although aware of Jessen's convictions for misconduct in public office, hired Jessen as chief of police, sanitary landfill area attendant and sewer operator, believing that a violation of sec. 946.12(4), Stats. 1973, constituted a misdemeanor rather than a felony. The village supported its belief that a violation of this statute was a misdemeanor with two letters: one from Richard C. Kelley, the Juneau county district attorney, to Jessen and the other from the judge originally assigned to the case, the Hon. THOMAS H. BARLAND, to the Juneau county clerk of courts.[6]

The board of trustees' resolution hiring Jessen on September 30, 1974, provided that his employment as police chief would become permanent upon satisfactory

---

[6] The Juneau county district attorney's letter provided in part:

"July 30, 1972
"Mr. William Jessen
515 Division St.
Mauston, Wisconsin

"Dear Mr. Jessen:
"Tomorrow morning the executive committee of the Juneau County Board of Supervisors will be signing a criminal complaint charging you with one count of felony embezzlement* of $2,524.00 and 26 misdemeanor counts of misconduct in public office.

"Very truly yours,
/S/ RICHARD C. KELLEY
"Richard C. Kelley
"District Attorney"

The letter authored by the judge recited:

---

* It must be noted that the jury found Jessen not guilty of the felony embezzlement charge referred to in the letters and acquitted him of the same.

completion of a six-month "probationary period." During this time, the village requested the LESB to certify Jessen as a qualified law enforcement officer.[7] In a letter dated December 9, 1974,[8] the Enforcement Stan-

---

"September 12, 1972
"Mr. Everett Stark
Clerk of Courts
Juneau County Courthouse
Mauston, Wisconsin

"Re: State vs. William Jessen

Dear Mr. Stark:
"If there be no objection entered within eight days from this date from Mr. Richard Kelley representing the State of Wisconsin or Mr. William Skemp representing William Jessen, the misdemeanor charges in the complaint are ordered transferred with the felony charge to Circuit Court for arraignment and trial.

"Very truly yours,
/S/ THOMAS H. BARLAND
"Thomas H. Barland
"County Judge, Branch I"

[7] No person may receive a permanent appointment to a law enforcement position without certification from the LESB stating that he or she is qualified to serve as a law enforcement officer in this state. Sec. 165.85(4)(c), Stats. One who has been convicted of an offense punishable as a felony in this state is ineligible for employment as a police officer, pursuant to Wis. Adm. Code LES §2.01(1)(d) and therefore cannot be certified as being qualified to serve in that capacity.

[8] This letter provided in part:

"December 9, 1974
"The Honorable John Adams
Mayor
Lyndon Station, Wisconsin 53944

"Dear Mayor:
"I have been requested by the administrator of the Division of Law Enforcement Services of the Wisconsin Department of Justice to write you in regard to the information received from you in reference to Mr. William G. Jessen. He has asked that I discuss two specific items contained in the application for enrollment for training and your accompanying letter dated November 27, 1974.

dards Board denied certification advising the village that a conviction for a violation of sec. 946.12(4), Stats. 1973, was a felony and that Jessen was, therefore, ineligible for employment as a law enforcement officer, pursuant to Wis. Adm. Code LES §2.01(1)(d). The village board did not accept the LESB's determination and refused to comply with the Wis. Adm. Code LES §2.01(1)(d). Upon determining that Jessen had satisfactorily completed his six-month probationary period, the village hired him on a full-time basis beginning April 1, 1975.

In April of 1977, the LESB, having determined some three years earlier that Jessen's felony convictions for misconduct in public office disqualified him for employment as a law enforcement officer pursuant to the Wisconsin Law Enforcement Standards (Wis. Adm. Code LES §2.01(1)(d)), demanded that the "mayor" (president) and board of trustees of Lyndon Station remove

---

". . . .

"You further state in your letter that Mr. Jessen stands convicted of 26 counts of misconduct in public office contrary to sec. 946.12, Stats., which you state are misdemeanors. We respectfully advise that a violation of sec. 946.12, Stats., is a felony.

"Therefore it is the position of the Law Enforcement Standards Board that Mr. Jessen is ineligible for employment on a probationary, temporary, part-time, or full time basis as a law enforcement officer by virtue of the disqualification contained in Wisconsin Administrative Code, section LES 2.01(1)(d).

"Yours truly,
/S/ JAMES C. McKAY, JR.
"James C. McKay, Jr.
"Assistant Attorney General"

The court of appeals erroneously struck this letter from the record on motion of the village on the ground that it was not contained in the record when, in fact, it was and is in the record at page M-2 attached to a "request to admit" made on the village's behalf. *See: Wisconsin Law Enforcement Standards Board v. Lyndon Station Village*, 98 Wis.2d 229, 233, 295 N.W.2d 818 (Ct. App. 1980).

Jessen from his position as chief of police. On July 5, 1977, after the village had refused to comply with the LESB's directive regarding the discharge of Jessen as police chief, the Law Enforcement Standards Board petitioned the circuit court for an alternative writ of mandamus to compel the village, its president and trustees, to terminate Jessen's employment or, in the alternative, to show cause why they should not do so. In its return to the writ, the village alleged that it could not lawfully discharge Jessen because such action would be in violation of the prohibition against employment discrimination on the basis of a felony conviction (sec. 111.32(5) (h), Stats., effective November 1, 1977), depriving Jessen of his constitutional right of due process and equal protection. The cause was thereafter scheduled for a hearing on the merits.

While this hearing was pending, the village trustees entered into a written contract with Jessen, setting forth that his employment was permanent and that he could only be removed for cause. Cause was defined as "misconduct or malfeasance occurring in his [Jessen's] position as chief of police of the village, or physical or mental incapacity of such nature that Jessen is no longer able to perform the duties of chief of police." The agreement also provided that Jessen "will not be removed from his employment except upon notice and hearing before an impartial decision-maker appointed by the village board." The written contract was executed on May 29, 1978, some three years after Jessen was hired but was made effective "as of the 1st day of April, 1975."

Following the hearing, the trial court ruled that the village had violated Wis. Adm. Code LES §2.01(1) (d) in employing Jessen as its chief of police and entered a judgment and order granting the peremptory writ of mandamus directing the village and its board of trustees

to remove Jessen from that position forthwith. The issuance of the writ was stayed pending an appeal to the court of appeals. The appellate court, in affirming the trial court, based its decision that the village was required to terminate Jessen's employment upon Wis. Const., art. XIII, sec. 3 which prohibits persons who had been convicted of "infamous crimes" from holding "any office of trust, profit or honor in this state,"[9] and ignored the Law Enforcement Standard prohibiting the employment of convicted felons as law enforcement officers. In reaching its decision, the court of appeals held that all felonies are infamous crimes within the meaning of this constitutional provision, and further, that the post of chief of police for a village is an office of "trust, profit or honor" and subject to the terms of Wis. Const. art. XIII, sec. 3. *Wisconsin Law Enforcement Standards Bd. v. Lyndon Station Village,* 98 Wis.2d 229, 238, 244–45, 295 N.W.2d 818 (Ct. App. 1980).

The following issues are presented for our review:

1. Is a violation of sec. 946.12(4), Stats. 1973, a felony?

2. Did the creation of sec. 111.32(5)(h), Stats., by ch. 125, Laws of 1977, relating to discrimination in employment and licensing on the basis of arrest and conviction records invalidate or modify Wis. Adm. Code LES §2.01(1)(d)?

3. Did the trial court abuse its discretion in issuing the peremptory writ of mandamus?

I. *Is a Violation of sec. 946.12(4), Stats. 1973, a Felony?*

The court of appeals, relying on the legislative history of the penalty for a violation of sec. 946.12(4), Stats.

---

[9] Wis. Const. art. XIII, sec. 3 provides in part:

"**Eligibility to office** . . . [N]o person convicted of any infamous crime in any court within the United States . . . shall be eligible to any office of trust, profit or honor in this state."

1973, held that a violation of this law constituted a felony and the village has not specifically challenged this determination in this court. In the oral argument before this court, the village's counsel appeared to concede that the offenses for which Jessen was convicted were felonies, stating "We acknowledge that the [sic] felony was committed." Our decision in *State ex rel. McDonald v. Douglas County Circuit Court,* 100 Wis.2d 569, 302 N.W.2d 462 (1981), dictates affirmance of the appellate court's conclusion that a violation of sec. 946.12(4), Stats. 1973, constitutes a felony.

In *McDonald,* this court held that a violation of a statute which does not specify the place of imprisonment, and is punishable by confinement for not more than one year is a felony. *McDonald, supra,* at 580. We reached this result upon an application of secs. 939.60 (definition of a felony) [10] and 973.02 (place of confinement where none is specified) [11] Stats., to the penalty provision at issue. We noted that an offense that fails to provide a place of confinement but which authorizes a prison sentence of one year is punishable with imprisonment in the state prisons, pursuant to sec. 973.02, Stats., and is, therefore, a "felony" as defined in sec. 939.60. *Ibid.*

---

[10] Sec. 939.60, Stats., provides:

"**Felony and misdemeanor defined.** A crime punishable by imprisonment in the Wisconsin state prisons is a felony. Every other crime is a misdemeanor."

[11] Sec. 973.02, Stats., provides:

"**Place of imprisonment when none expressed.** When a statute authorizes imprisonment for its violation but does not prescribe the place of imprisonment, 1) a sentence of less than one year shall be to the county jail, 2) a sentence of more than one year shall be to the Wisconsin state prisons and the minimum under the indeterminate sentence law shall be one year, and 3) a sentence of one year may be to either the Wisconsin state prisons or the county jail. But in any proper case sentence and commitment may nevertheless be to the department or any house of correction or other institution as provided by law."

In *McDonald, supra,* at 577–581, we re-examined *State ex rel. Gaynon v. Krueger,* 31 Wis.2d 609, 143 N.W.2d 437 (1966), and its progeny, and held that it is no longer necessary to engage in the legislative history analysis set forth therein when dealing with the question of whether an offense punishable with confinement of not more than one year and which fails to proscribe the institution of confinement is a felony or misdemeanor. In reviewing secs. 939.60 and 973.02, Stats., and analyzing the case law applicable thereto, we determined that the legislature intended that crimes failing to prescribe the place of imprisonment and punishable with incarceration for no more than one year, or a year or more, should be classified as felonies under these statutes. The analysis of the felony versus misdemeanor conflict adopted in *McDonald* was espoused in a dissent to *Gaynon* authored by Chief Justice CURRIE who stated that the classification statutes (sec. 939.60 and sec. 973.02) and the penalty provision of the offense in question were clear and unambiguous and should be applied because the legislature must be presumed to have enacted the classification statutes with full knowledge of and with reference to existing law:

" 'The language of the statute is plain and unambiguous. The cardinal principle of statutory construction is to save and not to destroy. As said in 82 C.J.S., Statutes, p. 794, sec. 362 "All statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it; . . . they are therefore to be construed in connection with and in harmony with the existing law, and as part of a general and uniform system of jurisprudence, that is, they are to be construed with reference to the whole system of law of which they form a part. So the meaning and effect of statutes are to be determined in connection, not only with the common law, . . . and the constitution, but also with reference to other statutes, . . ." ' " *Id.* at 625.

In arguing before the court of appeals, relying on *Gaynon* and its progeny, the village contended that a violation of sec. 946.12(4), Stats. 1973,[12] was only a misdemeanor for it was punishable by a fine of not more than $500 *or imprisonment for not more than one year* with no place of imprisonment specified. This court rendered the *McDonald* decision some months after the date of oral argument in the appellate court. Thus, we hold that anyone convicted of a violation of sec. 946.12 (4), Stats. 1973, when read in conjunction with sec. 973.02, is punishable with confinement in the state prisons and, therefore, a violation of sec. 946.12(4), Stats. 1973, constitutes a felony. *McDonald, supra;* sec. 939.60.

II. *Effect of Sec. 111.32(5)(h), Stats., on Wis. Adm. Code LES §2.01(1)(d).*

The village contends that the other issue in this case is whether the Wis. Adm. Code LES §2.01(1)(d) is in conflict with ch. 125 of the Laws of 1977. Lyndon Station asserts that the aforementioned administrative rule (LES §2.01(1)(d)) conflicts with sec. 111.32(5)(h), Stats., as the administrative rule prohibits the employment of nonpardoned felons in the field of law enforcement and should be rendered invalid. Whereas sec. 111.32(5)(h) prohibits employment and licensing discrimination on the basis of a conviction record unless the circumstances of the offense committed are substantially related to the duties and responsibilities attending the particular position to which the applicant aspires. *See:* sec. 111.32(5)(h)2, a. Thus, we are called upon to determine whether Wis. Adm. Code LES §2.01

[12] A violation of this statute is presently designated as a Class E felony. Sec. 946.12, Stats.

(1) (d) can be harmonized with sec. 111.32 (5) (h), when dealing with the question of possible discrimination in the employment and licensing of a law enforcement officer previously convicted of a felony.

Wis. Adm. Code LES §2.01 (1) (d) provides:

"LES 2.01 **Minimum qualifications for recruitment.** (1) Before an individual may commence employment on a probationary, temporary, part-time, or full-time basis as a law enforcement officer, that individual must have met recruit qualifications established by the board. The minimum qualifications for recruitment shall be:

" . . .

"(d) The applicant shall not have been convicted of any federal felony or of any offense which if committed in Wisconsin could be punished as a felony unless the applicant has been granted an absolute and unconditional pardon."

This provision was adopted pursuant to the broad rule-making powers granted to the LESB by the legislature in sec. 165.85 (1), (3) (a), (b) [13] and (4) (c). Sec. 165.85 (4) (c) empowers the LESB to adopt rules specifying the *minimum qualifications* including character, educational and training standards which persons desiring employment as law enforcement officers must meet:

"(c) In addition to the requirements of par. (b), [14] the board may, by rule, fix such other minimum qualifi-

[13] These paragraphs of sec. 165.85, Stats., provide:

"(3) POWERS. The board may:

"(a) Promulgate rules for the administration of this section including the authority to require the submission of reports and information pertaining to the administration of this section by law enforcement agencies in this state.

"(b) Establish minimum educational and training standards for admission to employment as a law enforcement officer: 1) in permanent positions, and 2) in temporary, probationary or part-time status."

[14] Sub. (4) (b) contains the statutory minimum requirements of a law enforcement training curriculum.

cations for the employment of law enforcement officers as relate to the competence and reliability of persons to assume and discharge the responsibilities of law enforcement officers, and the board shall prescribe the means for presenting evidence of fulfillment of these requirements."

Further, the legislature has granted the Enforcement Standards Board the power of certification, sec. 165.85 (3) (c), Stats.,[15] and expressly mandated that no person shall receive a permanent appointment as a law enforcement officer in the absence of the LESB's certification that such person is qualified to serve in that capacity, sec. 165.85(4) (b),[16] and entrusted the LESB with the responsibility of ensuring that law enforcement officers in this state are minimally qualified in terms of professional character, education and training:

"(1) FINDINGS AND POLICY. The legislature finds that the administration of criminal justice is of state-wide concern, and that law enforcement work is of vital importance to the health, safety and welfare of the people of this state and is of such a nature as to require training, education and the establishment of standards of a proper professional character. It is in the public interest that such standards be established and that such training and education be made available to persons who

[15] Sec. 165.85(3) (c), Stats., provides:

"(3) POWERS. The board may:

"(c) Certify persons as being qualified under this section to be law enforcement officers."

[16] Sec. 165.85(4) (b), Stats., provides in part:

"(4) REQUIRED STANDARDS.

"(b) No person may be appointed as a law enforcement officer, except on a temporary or probationary basis, unless the person has satisfactorily completed a preparatory program of law enforcement training approved by the board *and has been certified by the board as being qualified to be a law enforcement officer. . . .*" (Emphasis supplied.) There are two exceptions to the certification requirement, neither of which are applicable to Jessen. *See:* sec. 165.85(4) (a), Stats.

seek to become law enforcement officers, persons who are serving as such officers in a temporary or probationary capacity and persons already in regular service." Sec. 165.85(1), Stats.

Surely, an administrative rule prohibiting persons convicted of felonies from receiving appointments as law enforcement officers is designed to insure that only those who possess proper professional character, education and training are appointed to protect and promote the health, welfare and safety of the people of this state.

We turn now to a discussion of sec. 111.32(5)(h), Stats., effective November 1, 1977, which "prohibits discrimination in employment, membership or licensing on the basis of arrest or conviction record . . . [unless] . . . the subject of the conviction is substantially related to the ability of the person to perform the job or licensed activity."[17]

Sec. 111.32(5)(h), Stats., provides in part:

". . . It is discrimination because of arrest record or conviction record:[18]

". . .

"2. For any employer, labor organization, licensing agency or employment agency to refuse to hire, employ, admit or license any person, or to bar or terminate any person from employment, membership or licensing, or to discriminate against any person in promotion, compensation, terms, conditions or privileges of employment, membership or licensing, or otherwise to discriminate against any person because such person has an arrest record or a conviction record; provided, however, that it shall not be unlawful:

[17] Analysis of the Legislative Reference Bureau regarding the 1977 Assembly Bill No. 219 which ultimately became ch. 125, Laws of 1977.

[18] "Conviction record" is defined as including ". . . but is not limited to, information indicating that a person has been convicted of any felony, misdemeanor or other offense, placed on probation, fined, imprisoned or paroled pursuant to any law enforcement or military authority." Sec. 111.32(5)(h), Stats.

" . . .

"b. For an employer or licensing agency to refuse to employ or license, or to bar or terminate from employment or licensing, any person who has been convicted of any felony, misdemeanor or other offense the circumstances of which substantially relate to the circumstances of the particular job or licensed activity."

The parties do not dispute that the LESB is considered a "licensing agency"[19] within the purview of sec. 111.32(5)(h), Stats., as it has the exclusive power and responsibility in this state to certify persons as being qualified for employment as law enforcement officers. Next, we reach the question, Is Wis. Adm. Code LES §2.01(1)(d) in conflict with the above-quoted statute?

According to *Josam Mfg. Co. v. State Board of Health*, 26 Wis.2d 587, 596, 133 N.W.2d 301 (1965), this administrative rule has the force and effect of law and the village in its briefs and arguments to this court does not contend otherwise:

" 'Rules, regulations, and general orders enacted by administrative agencies pursuant to the powers delegated to them have the force and effect of law, . . .' 2 Am. Jur. (2d), Administrative Law, p. 119, sec. 292."

In *Josam*, this court further stated:

"In *Thomson v. Racine* (1943), 242 Wis. 591, 9 N.W. (2d) 91, it was held that commission orders are superior to municipal ordinances, where the two conflict. Commission rules, established within the jurisdiction of a commission, have the effect of public law. The court said, at page 597: '. . . the legislative control, either directly or through its designated administrative body, is superior to any conflicting action of the legislative body of the municipality.' " *Id.* at 596.

---

[19] *See:* Sec. 227.01(1), (3) and (4), Stats., defining "agency", "license" and "licensing" for the purposes of administrative procedure and review.

The municipality (village), through its legislative body (board of trustees), has acted in violation of an administrative rule in hiring a law enforcement officer who has been denied certification by the LESB. Thus, the rule of *Thomson v. Racine,* 242 Wis. 591, 9 N.W.2d 91 (1943), quoted in *Josam,* is applicable here and the administrative rule having the force and effect of law is superior to any conflicting action of the village.

As a corollary to the rule that validly enacted administrative rules are given the effect of law, it is generally accepted that the rules and regulations of administrative agencies are subject to the same principles of construction as apply to the construction of statutes and, in this case, the applicable rule is that conflicts between statutes should be harmonized when possible:

"In order to carry out the intent of the framers of an administrative rule or regulation, the court should harmonize the various parts and provisions of such rule or regulation and give them effect, if possible, provided this may be done without violating constitutional and statutory provisions . . .

"An administrative rule should ordinarily be given that construction which will, if possible, sustain its validity, and, where alternative interpretations of an administrative rule or regulation are possible, the more reasonable of the two is to be chosen, . . ." 73 C.J.S. *Public Adm. Bodies & Procedure,* §105 at 426 (1951).

and:

"Perhaps the first rule of construction as to administrative rules and regulations is that rules made in the exercise of a power delegated by statute should be construed together with the statute to make, if possible, an effectual piece of legislation in harmony with common sense and sound reason.

"The second rule is that generally the same rules of construction and interpretation govern the construction and interpretation of rules and regulations of administrative agencies as apply to statutes in the same field. . . .

". . . An administrative construction of the agency's own regulations is controlling in determining their meaning unless plainly erroneous or inconsistent with the regulations. . . ." 2 Am. Jur.2d, *Adm. Law* §307 at 135–36 (1962).

Thus, according to the cardinal rule of statutory construction:

". . . that conflicts between different statutes, by implication or otherwise, are not favored and will not be held to exist if they may otherwise be reasonably construed." (citations omitted). *Strong v. Milwaukee,* 38 Wis.2d 564, 570, 157 N.W.2d 619 (1968).

and that:

"Construction of statutes should be done in a way which harmonizes the whole system of law of which they are a part, and any conflict should be reconciled if possible." *Muskego-Norway C.S.J.S.D. No. 9 v. W.E.R.B.,* 35 Wis.2d 540, 556, 151 N.W.2d 617 (1967). *See also: Glinski v. Sheldon,* 88 Wis.2d 509, 519, 276 N.W.2d 815 (1979); *Kramer v. Hayward,* 57 Wis.2d 302, 311, 203 N.W.2d 871 (1973); *State v. Duffy,* 54 Wis.2d 61, 64, 194 N.W.2d 624 (1972).

the Law Enforcement Standard (Wis. Adm Code LES §2.01(1)(d), and sec. 111.32(5)(h), Stats., insofar as they seem inconsistent and relate to the same subject matter (conviction record as a ground for disqualification from employment or licensing) should be harmonized.

As noted, the legislature, with the enactment of sec. 165.85, Stats., has entrusted the LESB with the responsibility of establishing "minimum qualifications for the employment of law enforcement officers as relate to the competence and reliability of persons to assume and discharge the responsibilities of law enforcement officers." Sec. 165.85(4)(c). The LESB in accordance with its delegated authority to establish minimum qualifications for persons seeking employment as law enforcement officers promulgated Wis. Adm. Code LES §2.01(1)(d)

prohibiting nonpardoned felons from serving as law enforcement officers. The legislature, when creating sec. 111.32(5)(h), in 1977, is presumed to have acted with full knowledge of this provision of the administrative code adopted in 1970. *See: e.g., Kindy v. Hayes,* 44 Wis.2d 301, 314, 171 N.W.2d 324 (1969) (holding that the legislature is presumed to act with full knowledge of the existing law, including an administrative rule that was involved in a prior decision). Indeed, the fact that the legislature, when enacting ch. 125, Laws of 1977, made the licensing criteria of a number of licensing and examining boards of both professional and trade groups subject to the provisions of sec. 111.32(5)(h), *e.g.,* the examining board of architects and engineers, together with the barber and cosmetologists examining boards and the department of regulation and licensing of private detectives, investigators, watchmen and security guards, etc., is a strong indication that the legislature was cognizant that a felony conviction was, before the enactment of this legislation, a ground for denial or revocation of various licenses, including a Law Enforcement Standards Board certification.

Sec. 111.32(5)(h)2, b, expressly states that licensing (certification) discrimination on the basis of a conviction record does not violate this statute when the circumstances of the conviction "substantially relate to the circumstances of the particular job or licensed activity:"

".... [I]t shall not be unlawful:

". . . .

"b. For an employer or licensing agency to refuse to employ or license, or to bar or terminate from employment or licensing, any person who has been convicted of any felony . . . the circumstances of which substantially relate to the circumstances of the particular job or licensed activity."

Thus, it is obvious that the statute, sec. 111.32(5)(h), modifies the administrative rule, LES §2.01(1)(d).

Jessen was convicted of misconduct in public office on 26 felony counts of falsifying uniform traffic citations. As a police officer for the village, Jessen would be charged with enforcing the traffic laws. *See:* secs. 61.31 (2) Stats. Thus, under the facts of this case, it can hardly be said that the circumstances of the offense for which Jessen was convicted fail to meet the substantial relationship exception to the prohibition against employment and licensing discrimination on the basis of a conviction record set forth in sec. 111.32 (5) (h) 2 b, Stats., as common sense dictates that a conviction of the felony of misconduct in public office for falsifying traffic tickets certainly bears a substantial relationship to the duties of a police officer who is called upon to issue traffic citations. Therefore, when reading sec. 111.32 (5) (h), in conjunction with sec. 165.85 (4) (c) (empowering the LESB to promulgate minimum competency and reliability qualifications for employment of law enforcement officers) and Wis. Adm. Code LES §2.01 (1) (d) when dealing with the certification and employment of a law enforcement officer, we hold that the circumstances of Jessen's convictions for falsifying uniform traffic citations substantially relate to his duties as police chief for the village of Lyndon Station and thus is barred from holding a law enforcement position in Wisconsin. Further, we hold that Wis. Adm. Code LES §2.01 (1) (d), as modified herein, and sec. 111.32 (5) (h), are not in conflict.

Public trust in the integrity of our law enforcement officials is essential to the preservation of the public peace and for the enforcement of laws and ordinances. This trust and confidence is shaken by casting even the slightest suspicion against the professional character and integrity of a police chief. If the state authorities through our court system have convicted someone of 26

felonies, it stands to reason that his effectiveness as a law enforcement officer will be greatly diminished. What impression would be given to an impartial jury when the police chief, as the prosecution's primary witness in a serious criminal case, has to explain on cross-examination that he stands convicted of 26 felonies? We agree with the LESB that employment of a non-pardoned felon in a law enforcement capacity would only serve to undermine the public's trust in its police officers as well as the ability of such persons to adequately perform the duties of officers of the law.

*Mandamus*

This court in *Miller v. Smith,* 100 Wis.2d 609, 621, 622, 302 N.W.2d 468 (1981), set forth the standard of review and the criteria governing the issuance of a writ of mandamus as follows:

"A writ of mandamus is a discretionary writ in that it lies within the sound discretion of the trial court to either grant or deny. The trial judge's actions in either granting or denying the writ will be affirmed unless the trial judge abused his discretion. *Morrissette v. DeZonia,* 63 Wis.2d 429, 434, 217 N.W.2d 377 (1974); *State ex rel. Kurkierewicz v. Cannon, supra* n. 11 at 375–76. This court has set forth the following prerequisites for the issuance of the writ:

" '. . . a clear legal right; the duty sought to be enforced is positive and plain; the applicant for the writ shows that he will be substantially damaged by non-performance of such duty; and there is no other adequate specific legal remedy for the threatened injury, and no laches on the part of such applicant, and no special reasons exist rendering a resort on his part to the remedy, under the circumstances, inequitable. . . .' *Burns v. City of Madison,* 92 Wis.2d 232, 243, 248 N.W.2d 631 (1979) quoting from *State ex rel. Johnson v. County Court,* 41 Wis.2d 188, 192, 163 N.W.2d 6 (1968) and *Neu v. Voege,* 96 Wis. 489, 493, 71 N.W. 880 (1897)."

It is an abuse of discretion to refuse to issue the writ when the noted prerequisites are present: (1) a clear legal right; (2) a positive and plain duty; (3) substantial damages; and (4) no other adequate remedy at law. *Neu v. Voege, supra.* Further, " '[m]andamus is the proper remedy to compel public officers to perform duties arising out of their office and presently due to be performed.' " (cite omitted) *Walter Laev v. Karns,* 40 Wis.2d 114, 118, 161 N.W.2d 227 (1968) and *State ex rel. Portage Co. D. Dist. v. Newby,* 169 Wis. 208, 213, 171 N.W. 953 (1919) ; provided, however, the duty to act must be clear and unequivocal. On the other hand, "It is an abuse of discretion to compel action through mandamus when the duty is not clear and unequivocal and requires the exercise of discretion." (Cites omitted.) *Burns, supra,* at 239.

The village contends that the trial court abused its discretion in issuing the writ of mandamus without making a specific finding that Jessen's discharge would not be unjust or inequitable. It cites 52 Am. Jur.2d, *Mandamus* §40 (1970), for the proposition that the trial court abused its discretion in issuing the writ of mandamus without specifically considering "the urgency of the situation, the equities of the parties, the efficacy or futility of the writ if issued, the public policy or interests that may be involved and the question whether, if issued, the writ will promote substantial justice or on the contrary cause injustice, hardship or oppression." *Id.* at 365–66.

In answer to this claim, we note that compelling the removal of Jessen was urgent and promoted substantial justice as well as furthered public policy for, as previously stated, allowing one who stands convicted of the felony of misconduct in public office for falsifying traffic citations to serve in a law enforcement capacity seri-

ously undermines the public's trust in its police officers as well as such person's ability to adequately perform the duties and responsibilities of law enforcement officers.

Further, although a court, in exercising its discretion to grant or deny the writ, should consider all the facts and circumstances, including those referred to in 52 Am. Jur.2d, *Mandamus*, §40 (1970), we note that the section of Am. Jur. referenced by the village does temper the court's reliance on the noted factors in exercising its discretion in the following language:

"However, discretion should not be so exercised as to defeat rights clearly recognized and supported by established principles of law. Thus, judicial discretion should not be exercised to withhold the writ of mandamus to enforce a clear right conferred by statute, where no other remedy is available to secure such right, for the law and the right are imperative upon the court. To deny the writ in such case would amount to judicial assumption of legislative prerogatives; it would tend to emasculate or annul legislation and savor of judicial government.

"It is held that if all of the requisites to issuance of the writ are shown to be present the granting of the writ is a matter of right, but, conversely, the granting of the writ may be an abuse of discretion if the relator does not show a right to the relief requested." *Id.* at 366.

The rule alluded to in this provision of Am. Jur., namely, that it is an abuse of discretion to withhold the writ when it is sought to enforce a clear right conferred by statute and when other remedies are inadequate to secure that right was set forth by this court in *State ex rel. Dempsey v. Wena A.F. Co.*, 173 Wis. 651, 654, 182 N.W. 354 (1921), where it held that when a party seeks to enforce a right conferred by statute:

". . . courts cannot withhold the writ of *mandamus* to enforce that right without thwarting the legislative will.

Judicial discretion should not be exercised to withhold the writ of *mandamus* to enforce a clear right conferred by statute when no other remedy is available to secure such right. To do so amounts to judicial assumption of legislative prerogative, emasculates or annuls legislative enactments, and savors of judicial government."

This rule is applicable to properly enacted administrative rules as they have the force and effect of law. *Josam, supra.*

The legislature has authorized the Law Enforcement Standards Board to prescribe minimum qualifications which persons aspiring to employment as law enforcement officers must meet. Jessen stands convicted of felonies related to his employment and as such is ineligible to serve as a police officer in this state. Wis. Adm. Code LES §2.01(1)(d). The village hired him as its chief of police in 1974 despite being informed that such action would be violative of LES §2.01(1)(d), and further, made his employment in such capacity permanent notwithstanding the legislative mandate that "No person may be appointed as a law enforcement officer . . . unless the person . . . has been certified by the board [LESB] as being qualified to be a law enforcement officer." Sec. 165.85(4)(b), Stats. Thus, the Law Enforcement Standards Board has demonstrated a clear legal right to have Jessen removed from his position as police chief and that the village of Lyndon Station had a clear and unequivocal duty to discharge him. The village's duty to terminate Jessen's employment as its chief of police was mandatory, Wis. Adm. Code LES §2.01(1)(d) and sec. 165.85(4)(b), and the village has never claimed that there is some other legal remedy, aside from mandamus, to adequately enforce the LESB's right. Therefore, for the foregoing reasons, we hold the trial court properly issued the writ of mandamus. *Nue v. Voege, supra.*

The village has also challenged Wis. Adm. Code LES §2.01(1)(d) and the issuance of the writ of mandamus herein on the grounds that they have caused a denial of Jessen's constitutional guarantees of due process and equal protection. We do not reach these issues as well as the question of whether Wis. Const. art. XIII, sec. 3, presents a bar to Jessen's employment as police chief for Lyndon Station as our determinations that the enforcement of Wis. Adm. Code LES §2.01(1)(d) where the circumstances of the crime substantially relate to the circumstances of Jessen's employment as chief of police, and that the village employed Jessen in violation of the provisions of sec. 165.85(4)(b), Stats. (requiring LESB certification as a condition precedent to the hiring of a law enforcement officer on a permanent basis) are dispositive.

Although we do not reach the question of whether Jessen was subject to removal from his position as police chief under the provisions of Wis. Const. art. XIII, sec. 3, we disavow the appellate court's language and ruling that *all felonies* constitute "infamous crimes" within the parameters of this constitutional provision.

*By the Court.*—The decision of the Court of Appeals is affirmed.

SHIRLEY S. ABRAHAMSON, J. *(dissenting).* William S. Jessen has served as chief of police, sanitary landfill area attendant and assistant sewer operator for the Village of Lyndon Station for more than six and one-half years.[1] He also serves as the elected constable of the Village of Lyndon Station—elected April, 1977, reelected April, 1979, and reelected April, 1981.

[1] At the time he was hired, Jessen's salary as chief of police was $450 a month, as sanitary landfill area attendant $100 a month, and as assistant sewer operator $100 a month. He was to receive a raise of $50 per month after six months.

The decision announced today means that Jessen can no longer serve as chief of police. He can continue to serve as constable,[2] a position whose powers and duties, although unclear under the statute,[3] may overlap those of the chief of police. I do not know whether Lyndon Station, a village whose population was 533 in 1970 and 375 in 1980[4] will continue to employ Jessen as sanitary landfill area attendant or assistant sewer operator if he cannot also perform as chief of police. Whether or not Jessen remains an employee, the Village is now without a police chief.

I dissent because I believe it is error for this court to make the determination, as it does here, that the circumstances of Jessen's felony convictions in 1973 substantially relate to the present circumstances of his job as police chief and that he is therefore disqualified from being police chief in 1981. In my view the Law Enforcement Standards Board (LESB), not this court, should make this determination. In making the determination itself the majority has, I believe, usurped the powers of the LESB and of the Village Board of Lyndon Station; has exceeded its appellate jurisdiction by acting as a factfinder; and has violated rudimentary concepts of fair play.

The absence of an LESB determination of whether a substantial relation exists between the circumstances of the convictions and of the job and the need for such a determination as of this date is best shown by detailing the facts in chronological order.

---

[2] The LESB has no jurisdiction over popularly elected officials. Sec. 165.85(4)(a)2., Stats. 1979–80. *See also* paragraph 8 of the Stipulation of Facts.

[3] *See State v. Christensen,* 100 Wis.2d 507, 510, 302 N.W.2d 448 (1981).

[4] Wis. Legisl. Ref. Bureau, *1980 Census of Population,* Tables 9 and 10 (April 3, 1981).

Jessen was convicted of 26 counts of misconduct (falsification of uniform traffic citations in violation of sec. 946.12(4), Stats. 1971) while chief deputy sheriff of Juneau county.[5] He was sentenced in June of 1973 to the Wisconsin State Prison at Waupun, one year on each count, sentence on all 26 counts to run concurrently. The sentence was stayed and Jessen was placed on probation for a term of two years.[6]

On September 30, 1974, the Village Board of Lyndon Station hired Jessen, who was then on probation, to serve as chief of police, sanitary landfill area attendant, and assistant sewer operator. Initially Jessen was hired for a six-month probationary period and then on a permanent basis. It was the belief of the Board at that time that Jessen had been convicted of misdemeanors not felonies.[7] The district attorney of Juneau county had in fact represented the charges against Jessen as misdemeanors. This error was caused by the legislature's error in failing to state expressly whether a violation of sec. 946.12(4), Stats. 1971, was a misdemeanor or a felony. The trial court, the court of appeals and this

---

[5] See Jessen v. State, 95 Wis.2d 207, 290 N.W.2d 685 (1980).

[6] On May 15, 1975, Jessen received a discharge from the Department of Health and Social Services, Division of Corrections, effective June 5, 1975. The discharge stated that "Any civil rights lost as a result of such judgments of conviction are restored by virtue of this discharge, under the provisions of section 57.078 of the Statutes of the State of Wisconsin."

[7] See paragraph 13 of the Stipulation of Facts which states:
"13. At the time the Village Board first appointed Mr. Jessen as a law enforcement employee, the members of the Village Board believed that Mr. Jessen had been convicted of misdemeanors and not felonies. This belief was based upon two letters from the District Attorney's office which were made available to the Village Board which stated that the offenses of which Mr. Jessen was convicted were misdemeanors. Copies of the letters are attached hereto and incorporated herein as Exhibits D and E."

court[8] conclude that violation of sec. 946.12 (4) was a felony. The soundness of the Village Board's judgment in hiring as chief of police in 1974 a former Juneau county deputy sheriff who, 17 months earlier, had been convicted of 26 counts of falsifying traffic citations and who was on probation at the time he was hired is not the issue in this case.

In December 1974, the Village requested the LESB to certify Jessen as a qualified law enforcement officer.

[8] While the majority holding that violation of sec. 946.12, Stats. 1971, is a felony is supportable, the method by which it is reached is not. The majority states: "In *McDonald, supra* at 577–581, we re-examined *State ex rel. Gaynon v. Krueger,* 31 Wis.2d 609, 143 N.W.2d 437 (1966), and its progeny, and held that it is no longer necessary to engage in the legislative history analysis set forth therein when dealing with the question of whether an offense punishable with confinement of not more than one year and which fails to prescribe the institution of confinement is a felony or misdemeanor."

In *McDonald* the court tracked two arguments together to reach its result, one based on a reading of secs. 346.67, 346.74 (5), 939.60 and 973.02, Stats., the other based on the analysis of legislative history which *State ex rel. Gaynon v. Krueger,* 31 Wis.2d 609, 143 N.W.2d 437 (1966), requires. While the *McDonald* opinion was clearly critical of the *Gaynon* decision, and while the *McDonald* opinion is subject to the criticism that it straddles the approaches of both majority and dissenting opinions in *Gaynon,* the *McDonald* opinion deliberately stopped short of either overruling or abandoning the *Gaynon* decision. The court clearly stated in *McDonald* that it was not willing to go that far, saying:

"Our examination of these cases leads us to question seriously the rationale of *Gaynon* . . . . Despite the foregoing, our holding in this case does not require that we expressly overrule *Gaynon.* We believe the legislative history of sec. 346.67 and its accompanying penalty section, sec. 346.74 (5), reveal a clear intent that failing to return to the scene of an accident involving death or injury to a person be a felony, and thus *Gaynon* is not an obstacle to reaching that result." *McDonald, supra,* 100 Wis.2d at 577.

The majority opinion in the instant case interprets *McDonald* as saying that it is no longer necessary to engage in the legislative history analysis. Yet in *McDonald* the court did engage in legislative history analysis at length, *see* 100 Wis.2d at 579, n. 7.

The LESB concluded that Jessen was ineligible for employment on a probationary, temporary, part-time, or full-time basis as a law enforcement officer by virtue of his having failed to comply with LES 2.01(1)(d), Wis. Adm. Code, a rule promulgated by LESB, which provides that an applicant for a position as a law enforcement officer shall not have been convicted "of any offense which if committed in Wisconsin could be punished as a felony unless the applicant has been granted an absolute and unconditional pardon."[9] Over two and one-half years later, on April 1, 1977, the office of the attorney general, representing the LESB, wrote the president of the Village Board of Lyndon Station that unless the Village Board immediately removed Jessen as Lyndon Station chief of police, the LESB would "proceed to institute the appropriate proceedings on behalf of the Board for such removal." On July 8, 1977, the LESB initiated action against the Village Board asking the circuit court for Juneau county for relief in the form of the issuance of a writ of mandamus directing the Village to remove and discharge Jessen from his employment as chief of police.

Before the matter came before the Juneau county circuit court, the legislature enacted Chapter 125, Laws of 1977, effective November 1, 1977, adopting sec. 111.32 (5)(a) and (5)(h), Stats. 1979–80, prohibiting discrimination in employment because of an applicant's arrest record or conviction record. *See also* sec. 111.325, Stats. 1979–80. The Wisconsin legislature clearly set forth the public policy of the State: Prejudice and legal barriers which unfairly deny employment opportunities to ex-offenders should be eradicated.[10] The legislature care-

[9] LES 2.01(1)(d), Wis. Adm. Code, became effective October 1, 1970, and was amended, effective February 1, 1975, to exempt pardoned felons.

[10] The subjects of civil disabilities imposed on ex-offenders and employment discrimination have received increasing amounts

fully provided, however, that "it shall not be unlawful . . . [f]or an employer or licensing agency to refuse to employ or license, or to bar or terminate from employment or licensing, any person who has been convicted of any felony, misdemeanor or other offense the circumstances of which substantially relate to the circumstances of the particular job or licensed activity." Sec. 111.32 (5) (h) 2.b., Stats. 1979–80.

The LESB however did not revise its rule, LES sec. 2.01 (1) (d), Wis. Adm. Code, to bring it into harmony with sec. 111.32 (5) (a) and (5) (h) and legislative policy.[11] Nor did the LESB interpret LES sec. 2.01 (1) (d),

---

of attention from courts, state legislatures, and commentators. *See* Potuto, *A Model Proposal to Avoid Ex-Offender Employment Discrimination,* 41 Ohio St. L. J. 77 (1980) ; Perlman & Potuto, *The Uniform Law Commissioners Model Sentencing and Corrections Act: An Overview,* 58 Neb. L. Rev. 925 (1979) ; Brantiegan, *Rehabilitation and Occupational Licensing: A Conflict of Interests,* 13 Wm. & M. L. Rev. 794 (1972) ; Special Project, *The Collateral Consequences of a Criminal Conviction,* 23 Vand. L. Rev. 929, 1001–1117, 1155–1167 (1970) ; Comment, *Employment of Former Criminals,* 55 Corn. L. Rev. 306 (1970).

Several states have enacted statutes substantially similar to sec. 111.32 (5) (h), Stats. 1979–80. *See, e.g.,* Conn. Gen. Stat. Revision of 1958, Revised to 1981, sec. 4–61q; Fla. Stat. sec. 112.011 (1979) ; Hawaii Rev. Stat. ch. 378 (1976) ; Minn. Stat., secs. 364.01–10 (1980) ; N.J. Stat. Ann., sec. 11:10–6.1 (West 1976) (civil service employment) ; Criminal Offender Employment Act N.M. Stat. Ann., secs. 28–2–1 to 28–2–6 (1978) ; N.Y. Correc. Law, sec. 750–755 (McKinney Supp. 1979–80) ; Wash. Rev. Code, secs. 9.96A.010–9.96A.050 (1979).

For the approach of the National Conference of Commissioners on Uniform State Laws, *see* sec. 4–1005, Model Sentencing and Corrections Act, 10 U.L.A. Cum. Ann. Pocket Part for use in 1981 at p. 212. For another view, *see* A.B.A. Criminal Justice Section Project on Standards Relating to the Legal Status of Prisoners, *Tentative Draft of Standards Relating to the Legal Status of Prisoners,* 14 Am. Crim. L. Rev. 377, 613–619 (1977).

[11] Sec. 227.011 (2), Stats. 1979–80, provides: "No agency may adopt a rule which conflicts with state law."

Wis. Adm. Code, as the majority now interprets it, as being modified by sec. 111.32(5)(h) to mean that an applicant for a position as a law enforcement officer shall not have been convicted "of any offense which if committed in Wisconsin could be punished as a felony" (LES sec. 2.01(1)(d), Wis. Adm. Code) if the "circumstances of [the felony conviction] substantially relate to the circumstances of the particular job or licensed activity" (sec. 111.32(5)(h)2.b.) "unless the applicant has been granted an absolute and unconditional pardon" (LES sec. 2.01(1)(d), Wis. Adm. Code).[12]

After enactment of sec. 111.32(5)(h), the Village Board specifically considered whether there was a substantial relation between the circumstances of Jessen's conviction and his position of police chief and concluded that there was not.[13] The LESB, by comparison, proceeded in its lawsuit without reviewing its rule or its position as to Jessen and urged the circuit court to hold that the LESB had authority to exclude all unpardoned felons from law enforcement positions.

[12] The majority concludes that sec. 111.32(5)(h) modifies LES 2.01(1)(d), saying "Thus it is obvious that the statute, sec. 111.32(5)(h), modifies the administrative rule, LES sec. 2.01(1)(d) . . . . Further, we hold that Wis. Adm. Code LES sec. 2.01(1)(d), as modified herein, and sec. 111.32(5)(h), Stats., are not in conflict." *Supra*, pp. 491, 492.

[13] The parties' Stipulation of Facts states:

"15. As a result of the signing into law by Governer Schrieber on October 25, 1977, of Chapter 125, Laws of 1977, creating sec. 111.32(5)(h), Wis. Stats., the Village Board held a hearing at its regular meeting on March 13, 1978, to determine whether the circumstances of Mr. Jessen's conviction of violation of sec. 946.12, Wis. Stats., related to the circumstances of his present law enforcement employment for the Village of Lyndon Station and concluded said conviction does not substantially relate to his current employment. Copies of the minutes of the March 13, 1978, hearing at the Village Board and the resolution duly passed by the Village Board are attached hereto and incorporated herein as Exhibits G and H."

The Juneau county circuit court in September 1978 adopted the LESB's position. The circuit court concluded, as a matter of law, that LES 2.01(1)(d), Wis. Adm. Code, renders convicted and non-pardoned felons ineligible to serve as law enforcement officers; that LES 2.01(1)(d) is not voided by sec. 111.32(5)(h), Stats. 1979–80; and that sec. 111.32(5)(h) is not violated by enforcement of LES 2.01(1)(d). The majority rejects these conclusions of law and affirms the order and judgment on grounds not considered by the circuit court.

The court of appeals based its affirmance of the circuit court order and judgment not on LES 2.01(1)(d), Wis. Adm. Code, or on sec. 111.32(5)(h), but on the Wisconsin Constitution. The court of appeals held that sec. 3, Art. XIII, Wis. Const., barred Jessen from serving as chief of police. The majority need not and properly does not concern itself with this constitutional issue. I disagree with the reasoning of the court of appeals on this issue and find the reasoning set forth by Judge Bablitch in her dissenting opinion, *Wisconsin Law Enforcement Stds. Bd. v. Lyndon Station Village*, 98 Wis.2d 229, 251, 295 N.W.2d 818 (Ct. App. 1980), legally sound and persuasive.

As this restatement of the facts demonstrates, neither the LESB, nor the circuit court, nor the court of appeals has considered the issue of whether the circumstances of Jessen's convictions substantially relate to the circumstances of the job.

The majority—after correctly concluding that rule LES 2.01(1)(d) must be interpreted in harmony with sec. 111.32(5)(h) as barring only those felons, "the circumstances of [whose convictions] substantially relate to the circumstances of the particular job or licensed activity"—goes on to make that determination on its own, without a factual record, and to "hold that the circumstances of Jessen's convictions for falsifying uni-

form traffic citations substantially relate to his duties as police chief for the Village of Lyndon and thus [Jessen] is barred from holding a law enforcement position in Wisconsin." *Supra,* p. 492.

The majority does not state its authority or rationale for this *ab initio* determination.

The courts may have power to review the decision of a village board or the LESB as to whether a particular applicant meets the qualifications, but a court should not, as the majority does here, *ab initio* determine whether or not an individual is disqualified on the basis of his conviction record. The legislature has said that the village boards and the LESB—not the courts—have the authority to determine whether an individual meets the qualifications which the village boards and the LESB have established for police officers.

The legislature has granted power to the village board to select police officers. The village board is empowered "to act for the government and good order of the village . . . for its health, safety, welfare and convenience of the public." Sec. 61.34(1), Stats. 1979–80. The legislature makes clear that the statutory powers granted the village board are broad, and the powers granted in sec. 61.34(1), Stats., are "in addition to all other grants and shall be limited only by express language." Sec. 61.34 (1), Stats. 1979–80.

The village board's power to select police officers has, however, been limited by express statutory language. In 1969 the legislature created the LESB[14] which is

---

[14] The legislature states its findings and policy in part as follows:

"165.85 Law enforcement standards board. (1) FINDINGS AND POLICY. The legislature finds that the administration of criminal justice is of state-wide concern, and that law enforcement work is of vital importance to the health, safety and welfare of the people of this state and is of such a nature as to require training, education and the establishment of standards

authorized to establish state-wide minimum educational and training standards for law enforcement officers[15] and to certify persons as being qualified to be law enforcement officers.[16] The legislature also empowered the LESB to fix "minimum qualifications for the employment of law enforcement officers as relate to the competence and reliability of persons to assume and discharge the responsibilities of law enforcement officers, and the [LESB] shall prescribe the means for presenting evidence of fulfillment of these requirements." Sec. 165.85(4)(c), Stats. 1979–80. The LESB has not afforded Lyndon Station or Jessen the opportunity to present evidence to the LESB that Jessen has fulfilled the requirements set forth in LES 2.01(1)(d), Wis. Adm. Code, as interpreted by the majority opinion announced today. The LESB has never determined—with or with-

of a proper professional character. It is in the public interest that such standards be established and that such training and education be made available to persons who seek to become law enforcement officers, persons who are serving as such officers in a temporary or probationary capacity and persons already in regular service."

[15] Sec. 168.85(3)(b), Stats. 1979–80:

"(3) POWERS. The board may:

". . .

"(b) Establish minimum educational and training standards for admission to employment as a law enforcement officer: 1) in permanent positions, and 2) in temporary, probationary or part-time status."

[16] Secs. 168.85(3)(c) and 168.85(4)(d), Stats. 1979–80:

"(c) [The board may:] Certify persons as being qualified under this section to be law enforcement officers."

"(4) REQUIRED STANDARDS. . . . (d) The board shall issue a certificate evidencing satisfaction of the requirements of pars. (b) and (c) to any applicant who presents such evidence as is required by its rules, of satisfactory completion or requirements in another jurisdiction equivalent in content and quality to those fixed by the board under the board's authority as set out in pars. (b) and (c)."

out a hearing—that the circumstances of Jessen's conviction substantially relate to the circumstances of the job.

The import of secs. 61.34(1), 165.85 and 111.32(5) (h), Stats. 1979–80, and LES 2.01, Wis. Adm. Code, is that the village board and the LESB, not this court, must make the determination whether the applicant meets the minimum qualifications for the job, including whether the circumstances of the conviction substantially relate to the circumstances of the job.[17] In Wisconsin a conviction of a felony does not raise an irrebutable presumption of unfitness. The LESB must decide the issue of an ex-offender's fitness on the basis of the statute, its rules and the evidence presented to it. When, as here, an agency fails to exercise the decision-making function delegated to it by the legislature, the court cannot and should not exercise it. Many cases can be cited to illustrate this well-recognized principle. *Reidinger v. Optometry Examining Board*, 81 Wis.2d 292, 260 N.W.2d 270 (1977), is particularly relevant to the instant case. Reidinger's license to practice optometry was revoked by the Optometry Examining Board in 1975 pursuant to sec. 449.07 (1)(d), Stats. 1975, which empowered, but did not require, the Optometry Board to revoke a license if the licensee was convicted of any felony.[18] Reidinger was convicted of federal income tax evasion. He was in-

---

[17] The Village Board argues, without citing authority, that it, not the LESB, has the final decision-making authority as to "substantial relation." I cannot at this stage of the proceeding accept this position. It appears contrary to sec. 165.85. I do note, however, that the statutes do not make clear the relation of the LESB and the Village Board, the procedures to be used by the two, and the nature and scope of judicial review of their decisions.

[18] The court noted in *Reidinger* that since the Optometry Board's decision the legislature had amended the Optometry statute to make it subject to sec. 111.32(5)(a) and (h). *Reidinger, supra*, 81 Wis.2d at 299, n. 3.

vestigated by the Optometry Board and participated in the subsequent hearing on license revocation. The Optometry Board concluded that because Reidinger had been convicted of a felony, his license should be revoked. This court remanded the matter to the Optometry Board because the Optometry Board had failed to exercise its discretion. The Optometry Board's duty to protect the public, we said, can only be done on facts set forth in the Board's action based on the record before it.[19] In the instant case, a mandamus action, this court cannot, as a matter of procedure, remand the matter to the LESB. The court can, however, reverse the decision of the court of appeals and quash the writ thereby enabling

[19] In *Reidinger* the court said:

"In the statute under consideration here, it is clear that the Board 'may' revoke a license for conviction of a felony. It is equally clear that the Board may decide not to revoke a license when a licensee has been convicted of a felony. Under the statute, conviction of a felony does not raise an irrebuttable presumption of unfitness to practice optometry, but does raise a question for the board in the exercise of its discretion to determine. The choice lies within the discretion of the Board for one purpose only, to protect the public from incompetent or untrustworthy optometrists. As the Board pointed out in its brief, the legislative purpose in authorizing the suspension or revocation of a license for felony conviction is to protect the public interest and not to impose a second penalty for the criminal offense involved. *Kachian v. Optometry Board*, 44 Wis.2d 1, 6, 170 N.W.2d 743 (1969); *State v. MacIntyre*, 41 Wis.2d 481, 483–484, 164 N.W.2d 235 (1969). There is no reference to the protection of the public anywhere in the Board's findings, conclusion or order. Neither is there any mention of the relationship between the particular felony conviction here, the circumstances surrounding it and the fitness of petitioner to continue in the practice of optometry.

"This court regards income tax evasion as a serious offense, but here there is not a word as to the Board's view of the nature of the felony conviction much less as to how it relates to the protection of the public under the circumstances of this case." *Reidinger, supra*, 81 Wis.2d at 298–299.

the LESB to make the essential determination which is missing in this case.[20]

One possible rationale supporting the majority's making this *ab initio* determination is that the majority views the question of whether there is a substantial relation between the circumstances of the convictions and the position of police chief as a question of law which this court may decide *ab initio*.[21] The application of the legal standard "substantially relates" to the facts is generally, but not invariably, viewed as a question of law for purposes of judicial review. This court might well give weight to a determination of the LESB if made after seeing and hearing the witnesses. Such a determination might well be viewed as being in the area

---

[20] I believe Judge Bablitch of the court of appeals correctly analyzed the issue in her dissenting opinion in the court of appeals, 98 Wis.2d at 256–257, saying:

"The state undoubtedly has a high interest in protecting the public's confidence in government and in ensuring that public offices are not misused for private gain, as the majority notes. It also has a high interest in identical goals with respect to the many professions it licenses to serve the public. I think the former interest is no better served than the latter by an across-the-board exclusion of a large class of individuals who may have committed a single act, remote in time, then characterized as felonious but having no 'rational connection' to the office they subsequently seek to hold. *Schware v. Board of Bar Examiners,* 353 U.S. 232, 239 (1957).

"For these reasons I would hold . . . that the Law Enforcement Standards Board could not lawfully require the discharge of this village police chief absent a factual showing that the circumstances of his conviction 'substantially relate to the circumstances' of his office. . . ."

[21] *But see Aetna Life Ins. Co. v. Mitchell,* 101 Wis.2d 90, 303 N.W.2d 639 (1981), where a similar issue was classified as one of fact to be decided by the circuit court on the basis of a record made in the circuit court and reviewed by the supreme court to determine if the circuit court's findings of fact are clearly erroneous and against the great weight and clear preponderance of the evidence.

of the LESB's expertise.[22] Here, however, the LESB has made no such determination.

The resolution of the issue of substantial relation, even if a legal question, must be predicated on findings of fact. A factfinder must determine the circumstances of Jessen's conviction and of the duties of the job. A determination of the duties of the chief of police of Lyndon Station might involve both factual findings and conclusions of law, that is, an interpretation of the state statutes and the village ordinances. No such findings as to the conviction or the duties have been made by the LESB or the circuit court. The majority makes no mention of these missing factual determinations and apparently is prepared to act in a factual vacuum or supply the findings it needs. It is not the function of an appellate court to make factual determinations. *Cf. Wurtz v. Fleichman,* 97 Wis.2d 100, 107, 293 N.W.2d 155 (1980).

Even if I were to conclude, as the majority does, that this court can *ab initio* determine whether the circumstances of the convictions substantially relate to the circumstances of the job, I do not think that the court can on the basis of this record determine either the circumstances of Jessen's conviction or his duties as police chief of Lyndon Station.

The record does not contain the circumstances of Jessen's conviction. Essentially the record consists of the pleadings, lengthy briefs of the parties in the trial court, the decision of the trial court and the stipulation of facts entered into between the parties. The pleadings do not state facts which would be helpful, even if we

---

[22] *See Aetna Life Ins. Co. v. Mitchell,* 101 Wis.2d 90, 130, note 16, 303 N.W.2d 639 (1981) (Abrahamson, J. dissenting). *See also* Note, *Labor Law—Unemployment Compensation—Voluntary Termination Not Found Where There is Meritorious Excuse for Refusal to Pay Union Dues Based on Religious Grounds,* 64 Marq. L. Rev. 203, 207–210 (1980), for a discussion of judicial review of administrative agency decisions.

considered the facts as admitted as true for purposes of deciding the question of substantial relation. There was no trial at which evidence was submitted and the parties' stipulation does not supply the needed facts. The stipulation basically sets forth the chronology of events which is set forth in the majority opinion and in this opinion.[23] None of these documents describes the circumstances of the offense. Certainly those circumstances exist.

I believe that Jessen and Lyndon Station might, if given the opportunity, provide relevant information about the circumstances of Jessen's conviction. Jessen had defended himself against the charges by claiming that the sheriff of Juneau county and other employees had committed the offenses, not he. The jury obviously did not believe Jessen. After his conviction and after serving probation Jessen sought relief from the conviction, asserting that his attorney had learned that the Wis-

---

[23] The Stipulation does state that if the matter went to trial witnesses would testify that Jessen served the Village well as Police Chief and that his removal would cause hardship:

"16. If this matter went to trial numerous citizens and officials would testify that Mr. Jessen has faithfully, diligently and honestly served the Village of Lyndon Station as a law enforcement employee.

"17. If the matter went to trial Juneau County District Attorney Michael Solovey, Juneau County State Probation and Parole Agent James Dallman; Juneau County Sheriff Jack Ripley, Father Gaffney of St. Marys, Lyndon Station and citizens and officials would testify the law enforcement needs of the Village of Lyndon Station include an increase in crime in juvenile delinquency and surrounding areas require a full-time law enforcement officer in Lyndon Station. Mr. Jessen is the only law enforcement employee of the Village of Lyndon Station, and his removal will result in danger to public health and safety. Moreover, this position will not be filled by another given the established salary of $700 per month which is all the Village is able to pay. Thus, the discharge of Mr. Jessen will result in great hardship and irreparable injury to the Village of Lyndon Station."

consin Department of Justice had not disclosed at trial information in its files which revealed that the sheriff of Juneau county had committed misdeeds in office. Jessen also asserted that a representative of the Wisconsin Department of Justice informed his counsel that the investigation against that particular sheriff of Juneau county was terminated when the sheriff resigned from office.[24] Jessen's motion for post-conviction relief came to this court. This court denied Jessen relief on procedural grounds and did not review the merits of Jessen's claim that he had been denied due process of law as a result of the unconstitutional suppression of evidence by the state. This court held that a circuit court has no jurisdiction to entertain Jessen's postconviction motion or grant him relief because he was no longer under sentence. *Jessen v. State,* 95 Wis.2d 207, 290 N.W.2d 685 (1980). Although Jessen was unsuccessful in reopening the convictions, his assertions might be important to the determination of whether the circumstances of his conviction substantially relate to the duties of his job.

The record is similarly devoid of facts relating to the circumstances of Jessen's job. Is Jessen the only police officer in the Village? If not, how many officers does he command? The duties of village police chief are probably set forth in part by law and in larger part by custom.[25] Jessen has been police chief for six and one-half years. If this court is going to decide whether there is a substantial relation between the circumstances of the conviction and the circumstances of the job, as both

---

[24] It appears that prior to Jessen's trial, the Governor had ordered an investigation of the Juneau County Sheriff's office at Jessen's request. *Jessen v. State,* 95 Wis.2d 207, 290 N.W.2d 685 (1980).

[25] The Stipulation of Facts states:

"7. As a law enforcement employee, Mr. Jessen reports to, and obeys all orders of the President of the Village of Lyndon Station and the Village Board."

the statute and the majority opinion require, it ought to look at what Jessen is doing on the job.

The majority errs, I believe, in deciding this case on a record devoid of facts or evidence regarding Jessen's conduct prior to the convictions, Jessen's conduct upon which the convictions are based, Jessen's conduct after conviction, or the nature of the job of Lyndon Station police chief.

And the majority does not even consider the significant evidence there is on this threadbare record. For example the majority fails to consider that more than nine years have elapsed since Jessen committed the crimes; that Lyndon Station is prepared to prove that Jessen has successfully performed as a law enforcement officer for nearly seven years; that Lyndon Station can prove (I assume) that Jessen has had no convictions since 1973; that Jessen can continue to serve as constable; and that Lyndon Station is prepared to prove by testimony of Juneau county law enforcement officers that if Jessen is discharged law enforcement in the Village and Juneau county will be affected adversely.[26] The

---

[26] The attorney general similarly concluded. In an opinion reviewing the legislative history and background of sec. 111.32 (5) (h) the attorney general stated that "the policy behind the antidiscrimination statute militates against any automatic disqualification of applicants with criminal records. The thrust of the statute indicates that all of the information presented by the applicant, including but not limited to the former offense, should be considered by the licensing agency.

". . . [S]uch factors as the nature and number of offenses, the circumstances of the offense, the severity of the offense, the time intervening since the offense and any and all information evidencing rehabilitation of the offender, including job history and reputation in the community should be reviewed. Only then can an informed, nondiscriminatory decision be made as to the substantial relation of the conviction to the circumstances of the licensed activity and the applicant's good moral character." 68 OAG 202, 207–208 (1979).

See also sec. 4–100.5(c), Model Sentencing and Corrections Act adopted by the National Conference of Commissioners on Uni-

only fact the majority has considered is that Jessen was convicted of felonies committed while he was a law enforcement officer. Although announcing a test which accurately reflects the statutory language, *i.e.*, do the circumstances of the conviction substantially relate to the duties of the job, the majority in applying the test fails to recognize the difference between the circumstances of the conviction and the existence of a conviction.

Perhaps because the record lacks the necessary facts, the majority does not explain what the statutory phrase "substantially relate" means; it does not provide any guidelines for the agencies or circuit courts to use in applying the statutory test of "substantially relate;" and it does not explain how it applied the statutory test to the "facts of this case."

In determining whether there is a substantial relation between the circumstances of the conviction and the circumstances of the job, I would consider such factors as the potential impact of the offense on job performance; whether the job provides an opportunity for the commission of similar offenses; whether the circumstances leading to the offense still exist or are likely to recur; whether the person has committed other offenses since conviction; whether the person's conduct since conviction makes it likely that he will commit other offenses; the rehabilitative efforts of the person including job history and reputation in the community; and the

form State Laws in 1978, appearing in Cum. Ann. Pocket Part for use in 1981, 10 U.L.A., and sec. 10.4, A.B.A. Criminal Justice Section Project on Standards Relating to the Legal Status of Prisoners, *Tentative Draft of Standards Relating to the Legal Status of Prisoners*, 14 Am. Crim. L. Rev. 377, 613-619 (1977), for criteria similar to the ones I have set forth.

For state statutes similar to Wisconsin, some setting forth guidelines similar to the ones I set forth for determining the "relationship", *see* note 10 *supra*.

time elapsed since conviction.[27] I do not propose at this time to give weights to each of these factors or to state further the way in which they should be balanced, but it is clear that the majority has not considered them and has not indicated what consideration these or similar factors ought to be given.

I view the majority opinion as limited to its facts— namely a felony committed nearly seven years ago by a law enforcement officer. Nevertheless, I am concerned that the opinion might be read to bar forever all un-pardoned felons from being law enforcement officers. The majority says "We agree with the LESB that employment of a non-pardoned felon in a law enforcement capacity would only serve to undermine the public's trust in its police officers as well as the ability of such persons to adequately perform the duties of officers of the law." The majority cannot intend this language to bar all unpardoned convicted felons from all law enforcement positions, because the majority would then be rewriting sec. 111.32(5)(h), not interpreting it. The Wisconsin legislature did not exclude law enforcement officers from the substantial relation test.[28]

I reluctantly conclude that the majority has violated rudimentary concepts of fair play by ordering Jessen

---

[27] *See* Stipulation of Facts quoted at note 23 *supra*.

[28] The legislature knew how to exempt law enforcement officers if it wished to do so. Sec. 111.32(5)(e), Stats. 1979–80, expressly exempts law enforcement employment from prohibitions against age discrimination. Prior to 1977 legislative bills prohibiting criminal-record based disqualifications contained specific exemptions for law enforcement.

Statutes in several states exempt law enforcement officers from the operation of the prohibition against discrimination against ex-offenders. *See, e.g.,* Conn. Gen. Stat. Revision of 1958, Revised to 1981, sec. 4–6; Fla. Stat., sec. 112.011(2)(a) (1979); Minn. Stat., sec. 364.09 (1980); N.M. Stat. Ann., sec. 28–2–5 (1978); N.Y. Correc. Law, sec. 750(5) (McKinney Supp. 1979–80).

removed without giving either Jessen or the Village of Lyndon Station an opportunity to present evidence on and to argue therefrom the issue of whether the circumstances of Jessen's conviction in 1973 substantially relate to the circumstances of his job in 1981. Summary disposition of this issue by the majority without any factual record not only violates the state legislative mandate but also offends state and federal constitutional guarantees of due process. *Cf. Application for Admission to Bar of Douglas Childs,* 101 Wis.2d 159, 303 N.W.2d 663 (1981) ; *Schware v. Board of Bar Examiners,* 353 U.S. 232 (1957).

Because the LESB has not determined that the circumstances of Jessen's conviction substantially relate to the circumstances of the job and because the LESB has not determined that it cannot certify Jessen as a law enforcement officer under Rule 2.01 (1) (d), as interpreted by the majority, the LESB has not demonstrated that it has a clear legal right to the issuance of the writ or that Lyndon Station's duty is positive or plain; and the LESB has not shown that it has not been guilty of laches. These showings are prerequisites for the issuance of the writ. *See* majority opinion, p. 494. Furthermore the record shows that special reasons exist rendering resort by the LESB to the remedy of mandamus inequitable in this case.

I conclude that the circuit court erred as a matter of law in issuing the writ of mandamus, and for the reasons I have set forth, I dissent.